JOSHUA HORNER, trading as JOSHUA HORNER & CO.
  *vs.* GEORGE T. PARKHURST and JOHN W. S. BRADY,
  trading as PARKHURST & CO.

*Sale — Implied   Warranty — Caveat   Emptor — Province of
Court and  Jury—Rescission.*

Where the buyer has an opportunity to examine the thing sold,
there is no implied warranty, in the absence of fraud or express
warranty. that it shall be fit for the purpose for which it was
bought.   In such case, the rule *caveat emptor* applies.

When the contract of sale is in writing, the Court must decide
whether the language used amounts to an express warranty; but,
when the sale is oral, the question whether the representations
made by the seller were mere expressions of opinion or belief in
regard to a matter as to which the buyer is to exercise his own
judgment, or were the positive affirmation of a fact made for the
purpose of assuring the buyer of the truth of the fact so af-
firmed, is often a question of intention which should be submitted
to the jury.

If the seller delivers goods of the character and quality represented
by him at the time of the sale, he is entitled to recover the con-
tract price, even though they proved to be unsuitable for the
buyer's use.

In an action to recover the contract price of a car load of benzine
which was sold and delivered, the defence was set up that the ben-
zine was warranted to be of sixty-eight degrees specific gravity; that
it was found to be of a specific gravity of only sixty-five degrees;
and was in fact utterly worthless to the defendant, and that with-
in a reasonable time after the discovery of its inferior quality,
he offered to return it, but that the plaintiffs refused to receive it.
The Court instructed the jury that the plaintiffs were not en-
titled to recover, if the facts as alleged, were true.   HELD:

That this instruction covered the whole law of the. case, and the
defendant was not prejudiced by the refusal of a further in-
struction covering a part of the same ground.

Horner *vs.* Parkhurst.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered the three following prayers:

1. If the jury find that the plaintiffs sold and delivered to defendant the goods sued for, and that in making the sale the plaintiffs represented that they could furnish an article which they were then receiving from Smith's ferry, under a contract with one Chase, to supply them benzine of about 68 degrees gravity, and that the benzine must be light, or ought to be light, because all the oil coming from that district was light; and if they find that the oil delivered to the defendant was part of a lot received by the plaintiffs from Smith's ferry, under the contract with Chase referred to, and such as represented by plaintiffs, then the plaintiffs are entitled to recover the price of said goods, even though it turned out that the oil so delivered was unsuitable for the defendant's use and worthless to him.

2. If the jury shall find there was no fraud on the part of the plaintiffs in the sale of the goods referred to, and no express warranty by plaintiffs that the specific gravity should be 68 degrees; and if the jury find that the defendant purchased the car load of benzine sued for, and the same was delivered by the plaintiffs; and if they find that before or at the time of said delivery the defendant could have inspected the said benzine or applied a test to determine its gravity had he chosen to do so; and if they find that the defendant accepted the said benzine and turned it into his still without inspection or the application of any test, then it is no defence to this action if the said benzine turned out to be different in quality from what he supposed, and the plaintiffs are entitled to recover.

3. If the jury find that the plaintiffs undertook to sell to defendant a car of benzine of a certain specific gravity, and that the article delivered by the plaintiffs was of a different gravity, then the defendant had the right, upon the delivery of the benzine, to rescind the contract and refuse to receive the same, or to return it as soon as he could ascertain its quality; and if the jury shall find that the defendant neither declined to receive it nor to return the same as soon as he discovered the difference in quality, and that the defendant used a part of the same, and the offer to return was not made in a reasonable time or way after the delivery and acceptance of said benzine, if they find such, and when it could not be returned in the condition it was when plaintiffs sold it, then the plaintiffs are entitled to recover the price at which said goods were sold, less the difference, if any, between the market value of the article sold and the article possessing the desired gravity.

The defendant specially excepted to the granting of the second prayer of the plaintiffs.

1st. Because it submitted to the jury a matter of law.

2nd. Because there was no evidence in the cause upon which to base said prayer.

And also specially excepted to the granting of the plaintiffs' third prayer, because there was no evidence upon which to base the same; because it submitted for the finding of the jury a matter of law.

And the defendant objected generally to each and all of the plaintiffs' prayers.

The defendant offered the two following prayers:

1. If the jury shall find from the evidence, that in January, 1887, the defendant, through the witness Mitchell, applied to the plaintiffs for a car load of benzine, to be delivered at the factory of the defendant, and then stated to said plaintiffs, or one of them, that said benzine must be of a specific gravity of not less than sixty-eight; and if they shall further find from the evidence that said

Horner *vs.* Parkhurst.

plaintiffs knew at the time that said benzine was to be used by the said defendant in the manufacture of fertilizers, and that said plaintiffs then undertook and agreed to furnish and deliver to said defendant a car load of benzine as ordered by said Mitchell, (if the jury shall so find,) and then represented the same to be pure and sweet and straight, and said that they would guarantee it to be of a specific gravity of not less than sixty-eight; and if the jury shall further find from the evidence that in consequence of said agreement, said plaintiffs afterwards delivered a car load of benzine at the factory of the defendant, and pumped the same from a tank wagon into a still in said factory, which was then empty and clean, if the jury shall so find, and further find from the evidence that the defendant attempted to use the same a few days afterwards in the prosecution of his business, and then found said benzine to be worthless to him, and that he could not utilize the same, and that said benzine had but a specific gravity of sixty-four or five, and further find that said benzine could not have deteriorated to the extent of from sixty-eight to sixty-four or five from transportation to the factory of defendant; and if they shall further find from the evidence, that within a reasonable time after the delivery of said benzine, the defendant notified the plaintiffs that said benzine was worthless and could not be used by him, and that its specific gravity was only sixty-five, and notified the plaintiffs to take it away, or so much thereof as could be removed, and further find that said plaintiffs refused to accept the same, unless the defendant would pump it into a tank wagon; and if the jury shall further find from the evidence, that owing to the construction of the said still in said factory, it was physically impossible so to pump said benzine into a tank wagon, but that said plaintiffs offered to put it into barrels, and further find sometime afterwards said defendant did, in fact, put said benzine, or the greater

part thereof, in barrels, and that said plaintiffs did not take the same away, and declined to receive it, that then the plaintiffs cannot recover in this action.

2. If the jury believe from the evidence that the article of benzine sued for in this case, was not as represented by the plaintiffs, or one of them, to the defendant, at the time of the sale; and if they further find that the defendant was induced to purchase said article by misrepresentation of the plaintiffs, or one of them, made to the defendant at the time of the sale, and that in consequence thereof he received said article, and that the same, if they so find, was of no value to him, and that he did all he reasonably could to return said article to the plaintiffs, so soon as he could discover its quality, and that the plaintiffs refused to take it back, then the verdict must be for the defendant.

The Court (FOWLER, J.,) granted the plaintiffs' prayers, and the first prayer of the defendant, but refused his second prayer. The defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and MCSHERRY, J.

*John I. Yellott,* for the appellant..

*David G. McIntosh,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The plaintiffs were dealers in benzine and petroleum, and the defendant was a manufacturer of fertilizers, and sometimes used benzine in the process of manufacture. This is an action to recover the contract price of a cargo of benzine sold and delivered to the defendant. According to the plaintiffs' testimony, Mitchell, the defendant's agent, came to the office of the plaintiffs to buy a cargo of benzine, and said he wanted a very light benzine,

but did not say for what purpose the defendant wanted it. The plaintiffs told him they were getting a lot of benzine under a contract with Chase & Company, of Smith's Ferry, a western district, where they produced no other kind than light benzine; that plaintiffs had agreed to sell it to one Nicolai, but supposed they could make an arrangement with him to let the defendant have a cargo. Mitchell thereupon agreed to take it. Plaintiffs did not agree or warrant it should be *sixty-eight degrees* gravity. Several days after its delivery Mitchell came back to plaintiffs with a sample of the benzine and requested them to test it. This was done and it was found to be *sixty-five degrees* gravity. No complaint was made at that time in regard to its quality, nor was there any offer to return it till long after the sale and delivery. Precisely how long the witness does not say. So much, then, for the plaintiffs' testimony.

Mitchell on the other hand testifies he told the plaintiffs that the defendant could not use in his business benzine of less than *sixty-eight degrees* gravity, and that they agreed to warrant that the benzine should be at least sixty-eight degrees, and it was upon this warranty that it was bought; that a few days after its delivery the defendant found he could not use it in the manufacture of his fertilizers, that it was in fact worthless to him, and that the witness by the direction of the defendant took a sample of it back to the plaintiffs and told them that it did not come up to the guarantee; that it was of no use to the defendant, and requested the plaintiffs to take it away.

Now upon this testimony, there are, it seems to us, but two questions,—1st. Whether the benzine was sold by the plaintiffs on a warranty that it should be of sixty-eight degrees gravity;—and 2ndly, if so, did the defendant offer to return it within a reasonable time after he found it was of an inferior quality?

The testimony in regard to both of these questions, was conflicting, but in granting the plaintiffs' third and the defendant's first prayer, the law as applicable to these questions was fully and plainly submitted to the jury. If there was an *express warranty* that the benzine should be sixty-eight degrees specific gravity, and it turned out to be of an inferior quality, then, to entitle the defendant to a rescission of the contract, it was incumbent on him to return, or to offer to return it to the plaintiffs within a reasonable time after he discovered its quality, and if he failed to do so, the plaintiffs were entitled to recover the market value of the benzine. In other words, they were entitled to recover the contract price of the benzine, less the difference, if any, between the market value of the benzine delivered, and benzine of sixty-eight degrees gravity, as warranted by the plaintiffs.

The doctrine of implied warranty has not, it seems to us, any application to the facts in this case. Where the buyer has an opportunity of examining the thing sold, there is no implied warranty, in the absence of fraud or *express warranty*, that it shall be fit for the purpose for which it was bought. In such cases the rule *caveat emptor* applies, by which is meant, that unless the buyer sees fit to require a warranty, he takes upon himself the risk as to quality. *Osgood vs. Lewis*, 2 *H. & G.*, 518; *Hyatt vs. Boyle*, 5 *G. & J.*, 110; *Rice vs. Forsyth*, 41 *Md.*, 389.

So, in this case, if the defendant had an opportunity of inspecting and testing the benzine before he used it, then, in the absence of fraud or express warranty, it was no defence to the action that it turned out to be inferior in quality to what he supposed it to be or what he wanted. There was no error therefore in granting the plaintiffs' second prayer. The special objection to this prayer on the ground that the question whether the plaintiffs warranted the benzine to be of sixty-eight degrees gravity was a question of law, and ought not to have been submitted to the finding of the jury is not well taken.

Horner *vs.* Parkhurst.

Where the contract of sale is in writing, the Court must, it is true, decide whether the language used amounts to an express warranty; but when the sale is by word of mouth, the question whether the representations made by the buyer are to be considered as merely the expression of opinion or belief in regard to a matter, as to which the buyer is to exercise his own judgment, or the positive affirmation of a fact made for the purpose of assuring the buyer of the truth of the fact so affirmed, may in many cases be a question of intention, the finding of which ought to be left with the jury. It was so decided in the early case of *Osgood vs. Lewis,* 2 *H. & G.,* 58; and affirmed repeatedly in subsequent cases.

The plaintiffs' first prayer is, it seems to us, free from objection. If they delivered to the defendant benzine of the character and quality represented by them at the time of making the sale, and that is the plain meaning of the prayer, they were entitled to recover the contract price, even though it proved to be unsuitable for the defendant's use. This is a familiar principle which lies at the bottom of all sales of personal property.

Nor do we see how the defendant was in any manner prejudiced by the refusal of his second prayer. His first prayer, which was granted, covered the whole law of the case. In other words, if the plaintiffs guarantied the benzine to be sixty-eight degrees, and it turned out to be but sixty-four degrees, and was therefore useless to the defendant, and that within a reasonable time after he discovered it to be of an inferior quality, he offered to return it, and the plaintiffs refused to accept it, then the plaintiffs were not entitled to recover. These facts, if found by the jury, amounted to a rescission of the contract, and if so, the prayer granted by the Court covered the entire defence set up by the defendant.

*Judgment affirmed.*

(Decided 11th June, 1889.)