COLCHORD MACHINERY COMPANY, Respondent, v. LOY-WILSON FOUNDRY & MACHINERY COMPANY, Appellant.

St. Louis Court of Appeals, May 12, 1908.

1. SALES: Implied Warranty: Fitness for Use Intended: Caveat Emptor. The doctrine of implied warranty of the fitness of a chattel for the purpose for which it is sold is not inflexible; where a chattel is sold, of which the seller is not the manufacturer and no fraud is shown, and where the buyer has an opportunity to inspect it, the doctrine of *caveat emptor* applies.

2. ———: ———: ———: Opportunity to Inspect. And in such case there is no implied warranty, covering defects which might have been detected by reasonable inspection, that the machine was fit for the purpose for which it was employed.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston*, Judge.

AFFIRMED.

*H. H. Bloss* for appellant.

(1) A warranty express or implied will obtain in favor of a buyer, where the seller has knowledge of the intended use of a machine, whether the buyer avails himself of the opportunity of inspection or not and even though the seller is ignorant of the defect, that renders the machine unsuitable for the purposes for which it

was bought.   Brewing Association v. McEnroe, 80 Mo.
App. 429; Steel Works Co. v. Saymons, 110 Mo. App.
50.   And the fact that the machine was a second-hand
machine made no difference in the law of implied war-
ranty.    New Birdsall Co. v. Keys, 99 Mo. App. 458;
Brown v. Weldon, 27 Mo. App. 268; Brewing Assn. v.
McEnroe, 80 Mo. App. 429.   (2)   The defense in this
action was to the effect that there was an implied war-
ranty of adaptability or suitableness of the machine
purchased for the purposes for which it was purchased
and designed.   Moore v. Koeger, 113 Mo. App. 423.
Our Supreme Court uses this language: "The adapta-
tion of a machine to the uses for which it is made is al-
ways warranted." Comings v. Leedy, 114 Mo. 478. And
authorities distinguishing between the different rights
that accrue to a buyer, in cases where the article pur-
chased is bought for some specific use or purpose known
to the seller and where it is not so purchased are as
follows:   The New Birdsall Co. v. Keys, 99 Mo. App.
429; Galbreath v. Carnes, 91 Mo. App. 514; Water Co.
v. Bathe, 41 Mo. App. 289; Grigsby v. Stapleton, 94
Mo. 426; Johnson v. Spraull, 50 Mo. App. 121.

*James A. Potter* and *Carter, Collins & Jones* for
respondent.

(1)   There is no implied warranty of quality in
the scale of second-hand machinery or any other exist-
ing chattel, where the buyer sees the property and has
an opportunity to inspect the article before buying and
there is no fraud or concealment on the part of the
seller.   Joy v. Cable, 102 S. W. 30; Morris v. Reinsted-
ler, 90 Mo. App. 626; Anthony v. Potts, 63 Mo. App.
517; Wilson v. Belles, 22 Pa. Super. Ct. 477; Ramming
v. Caldwell, 49 Ill. App. 175; Natl. Cotton Oil Co. v.
Young, 85 S. W. 92; Kernan v. Crook, 59 Md. App.
753; Muhr v. Eagle, 7 Mo. App. 590; Scully v. Miller,
29 Leg. Int. (Pa.) 230; Horner v. Parkhurst, 71 Md.

110; 10 Am. and Eng. Ency. Law, pp. 127, 135-6; Tiedman on Sales, sec. 187; Benjamin on Sales, secs. 656, 647; Telluride P. Co. v. Crane Co., 208 Ill. App. 218. (2) The doctrine of *caveat emptor* is particularly applicable where the buyer has not only an opportunity to inspect, but where he actually does make what inspection he deems necessary. Parish v. Doyle, 85 S. W. 647; Rinschler v. Jeliffe, 9 Daly 469; Lord v. Grow, 80 Am. Dec. 504; Becker v. Browner, 18 Ill. App. 39; J. Rayner v. Rees, 58 Ill. App. 292; Deming v. Foster, 42 N. H. 165; Barnett v. Stanton, 2 Ala. 195; Mixer v. Coburn, 52 Mass. 559; Bowman v. Clemmer, 50 Ind. 10; Hood v. Bloch, 29 W. Va. 244; Getty v. Roundree, 54 Am. Dec. 138; Day v. Mapes-Reeves Const. Co., 174 Mass. 412; Pewett v. Richardson, 95 S. W. 787; Higgins v. Clish, 34 N. S. 135; Norwich v. Brewery Co., 95 Ill. App. 162. (3) The rule of *caveat emptor* has no exception where the vender is not the manufacturer, and the vendee has equal knowledge and equal opportunity of obtaining a knowledge of the quality and condition of the article. Joy v. Bank (Tex.), 74 S. W. 325; Higgins v. Clinsh, 34 N. S. 135; Bartlet v. Hoppock, 34 N. Y. 118; Barnard v. Kellog, 10 Wall. 388, 77 U. S. 989; Pemberton v. Dean, 92 N. W. 478; Collins v. Tigner, 60 Del. App. 978; Gage v. Carpenter, 107 Fed. 886, 47 C. C. A. 39; Martin v. Roehm, 92 Ill. App. 87; Pascal v. Goldstein, 100 N. Y. 1025; Borden & Selleck Co. v. Fraser & Chalmers, 118 Ill. App. 655. (4) There is no implied warranty in the sale of an existing article where the buyer has an opportunity to inspect and the defects, if any, are patent or discoverable by the exercise of ordinary care. Moore v. Koger, 113 Mo. App. 423; Cook v. Finch, 117 Ga. 541; Scott v. Geiser Mfg. Co., 80 Pac. 955.

GOODE, J.—While this defendant was building a machine shop and foundry in Aurora, one of its princi-

pal officers, Mr. Loy, observed in the foundry of McNeal
& Company, in the city of Joplin, a second-hand machine
known as a pipe machine, used to cut grooves or threads
in casings or pipes.    This second-hand machine was
the property of the plaintiff company and had been ac-
quired in a trade between plaintiff and the McNeal
Company of Joplin.   It had been used for seven or eight
years by the latter company, which desired a larger
machine and had traded the one in question to plaintiff
for a larger one.    After the trade plaintiff had left it
for a time with McNeal & Company and it was still
in use in their shops when Loy saw it.   He thought it
would answer the defendant's needs and opened a cor-
respondence with plaintiff looking to its purchase.
Plaintiff does business in St. Louis and never had seen
this particular machine, having traded for it on the
representations of the McNeal Company.   The entire
negotiation between the parties to this action was by
letter and telegram.   They disagreed about the price,
as plaintiff refused to sell for less than $300
and rejected two offers of lower prices made by defend-
ant.   The negotiation began about March 14th and was
closed on the 21st.    In one letter plaintiff notified de-
fendant the machine had been acquired second-hand
from McNeal & Company by plaintiff for the purpose of
selling it at a profit.   This was in answer to an offer by
defendant to pay $240.   In another letter plaintiff
stated it had been offered $325 in St. Louis for the ma-
chine, provided the dies were in a satisfactory condi-
tion.   On March 21st, defendant telegraphed it would
accept plaintiff's terms, and on the same day plaintiff
wrote, acknowledging receipt of the telegram and say-
ing the trade would be closed, though plaintiff had re-
ceived an offer of $325, because the latter offer was
made on the condition that the taps and dies pertaining
to the machine were in good order; and as plaintiff had
been unable to ascertain from the McNeal Company

whether they were or not, it could not conclude the sale to the St. Louis bidder, and accordingly had entered defendant's order for the machine, complete with all taps, dies and wrenches which might be furnished with it by McNeal & Company, the price to be $300 f. o. b. cars, net, Joplin. Before buying Loy had been in the shops of the McNeal Company three or four times to inspect the machine, but had never seen it in operation. He testified the only reason he failed to see it at work was because it happened to be idle when he was in the shops; that he could have seen it working if he had stayed until it was put in operation; but he only remained for five or ten minutes each visit. The testimony shows the machine was in operation five or six hours a day. Perhaps a couple of letters written by defendant had better be copied in order to make clear what defendant's manager knew of the machine before he bought it.

"Aurora, Mo., 3-14-1906.
"W. R. Colchord Mach. Co.,
    "St. Louis, Mo.

"Gentlemen: Yours of the 13th at hand in regard to the second-hand pipe machine at McNeal & Co.'s, Joplin. We did not expect such a big price. The writer is acquainted with the machine which has been in use 12 or 15 years. Also know what you gave for it in the trade ($250.00). We expected a price of $200 instead of $300. We would give you $240 cash for it f. o. b. Joplin, including all dies, etc., that are now with it. Think we offer all it's worth.

        "Respt.
        "LOY-WILSON FDY. & M. WORKS,
                    S. E. LOY."

"Colchord Mach. Co.,

 "St. Louis, Mo.

 "Gents: Yours received in regard to the McNeal and Co., pipe machine. We will raise our price to $250 for machine, all dies and taps and etc., that now belong to it. This is our limit. The machine is very old and much worn. The above is more than it is really worth. We have found since writing you another machine that we can get providing you do not accept the above price. Will thank you for prompt reply.

    "Respt.,

   "Loy-Wilson Fdr. & M. Works,

     S. E. Loy."

Much of the testimony went to prove the machine worked well until it was dismantled in the shops of the McNeal Company and loaded on the car for shipment to Aurora; but the testimony for defendant was it would not cut threads on pipes when put into operation after it had been installed in defendant's shops at Aurora. A piece some five inches by twelve had been broken and afterwards patched near the end of the machine where the die plate was fastened. Defendant insists this break caused the machine to be useless as the defect could not be repaired effectively. The break had existed a long time before the sale and, according to the testimony of workmen in the McNeal shops, did not interfere with the efficiency of the device. There was testimony pro and con on this point, as there was, too, regarding whether or not the patch was likely to be observed in a reasonably careful inspection. Some witnesses swore it was in plain sight and could not escape attention; whereas others said it might. Defendant refused to pay the agreed price and this action was instituted to recover it. The only defense set up in the answer was breach of an implied warranty that the machine should be fit for the purpose for which it was

131 App.—35

sold. Fraud was not charged, the allegation being that in consequence of the machine having been broken it would not cut true grooves and was unfit for use. It was further alleged this defect was unknown to defendant at the time of the purchase and immediately after it was detected defendant offered to return the property to plaintiff and still so offers. Damages by way of counterclaim in the sum of $10 were prayed, said sum representing the cost of shipping the machine from Joplin to Aurora. A verdict was found for plaintiff. The case was instructed too freely, and each of the instructions given for plaintiff is assailed as erroneous. We do not consider it necessary to review the instructions, for, in our opinion, they were rather too favorable to the defense. Some theories were advanced which ought not to have been; for instance: the defense of fraud was thrown into the case by the instructions, though it was not pleaded, nor was any evidence given from which fraud on the part of the plaintiff could be inferred. The relevant theory of the instructions regarding the supposed breach of warranty was, that if the machine was known to defendant to be second-hand and defendant's officer had an opportunity to and did inspect it before buying, and plaintiff practiced no fraud in the sale, and the defect in the machine, if any, could have been detected by an ordinarily careful inspection, the verdict must be for plaintiff. Defendant's counsel contends the instructions were wrong because they left out of view plaintiff's implied warranty that the machine should be fit for the purpose for which it was sold. The sale is argued to have carried this warranty whether there was an opportunity to inspect or not, and even though the seller was ignorant of the defect. We attach slight importance to the fact of the machine being second-hand. Nevertheless it would be difficult to conceive a case presenting less reason for implying a warranty that a purchased article should

be fit for the purpose for which it was bought.    The
machine was not sold by plaintiff as a manufacturer,
or by sample.    Defendant's manager had no cause to
rely on the judgment of plaintiff regarding the fitness
of the machine, did not rely on it, and the price of a
first-class machine was not paid.    Defendant's mana-
ger said he was acquainted with the one in controversy,
knew it had been in use for twelve years and was old,
very much worn and worth less than $250, the price
he offered.    He had previously declared $240 was all
it was worth.    It was proved a new machine of this kind
would cost from six to eight hundred dollars.    A war-
ranty of the fitness of a chattel for a certain purpose,
is not implied necessarily because the seller knows the
buyer is buying it for such purpose.    Courts do not
treat the doctrine of implied warranty of fitness as an
unconditioned dogma of the law.    If they did, the most
unjust consequences would ensue. Attention to the cases
will show there are few legal subject-matters in which
the application of the pertinent rules of law is more
controlled by the circumstances of cases than in those
involving implied warranties in the sales of chattels.
As these transactions are of infinite diversity, the rules
controlling them are flexible and adaptive.    The rule of
decision for the present case is that, in the sale of per-
sonal property without an express warranty, where the
buyer has an opportunity to inspect the commodity
and the seller is guilty of no fraud, and is neither the
manufacturer nor the grower of the article sold, the
doctrine of *caveat emptor* applies.    [Barnard v. Kel-
logg, 10 Wall. 383; Kellogg Bridge Co. v. Hamilton, 110
U. S. 108, 112.]    This case clearly falls under said doc-
trine.    The court below instructed the jury to
find for defendant if the defect or break in the machine
rendered it unfit for use and could not be discovered
by a reasonable inspection.    We doubt if the law raises
an implied warranty, even against latent defects, when

an article is sold on inspection, but refrain from ruling on this question because the instruction regarding it was in favor of the appealing party. The question to be determined is whether there is an implied warranty, covering defects which might have been detected by a reasonable inspection, that the machine was fit for the purpose for which it was bought. In our opinion no case can be found which supports such a doctrine. [Borden v. Frazier, 118 Ill. App. 655; Deming v. Foster, 42 N. H. 165; Wilson v. Belles, 22 Pa. Sup. Ct. 477; Lord v. Growe, 39 Pa. St. 88; 80 Am. Dec. 504; Horner v. Parkhurst, 71 Md. 110; Scott Lumber Co. v. Mfg. Co., 91 Wis. 667; Joy v. Bank, 74 S. W. (Tex.) 325; Jones v. Just, L. R. 3 Q. B. 197, 202. The defendant got the identical machine it selected and ordered, and in such cases, too, there is no implied warranty. [Case Plow Works v. Niles, 90 Wis. 590; Goulds v. Brophy, 42 Minn. 109; Chanter v. Hopkins, 4 Mees. & W. 398; Milwaukee Boiler Co. v. Duncan, 87 Wis. 120; Seitz v. Refrig. Co., 141 U. S. 510, 518.]

The judgment is affirmed. All concur.