## CHARLES T. OVERHULSER, Respondent, v. EDWARD W. PEACOCK, Appellant.

### St. Louis Court of Appeals, May 17, 1910.

1. **SALES: Fraud and Deceit: Rescission of Contract: Silence as to Defects.** For silence in respect to a defect in an article sold to be ground for rescission by the buyer, when he buys on his own judgment and no warranty is given, the silence must be attended by circumstances rendering it a fraud; there must be some agreement or relationship that makes it the duty of the seller to divulge the defect.

———: ———: ———: ———: **Facts Stated.** Where a seller stated that if the horse were sound the price would be $200, and accepted a much lower price, and told the buyer the horse had had the distemper which had left his wind a little heavy, and the buyer saw the horse and thoroughly inspected him and brought on his own judgment after the seller had made said statements, which should have induced the most cautious examination, the mere silence of the seller in not stating that the horse had the heaves would not *ipso facto* be a fraud, and the question where the seller was guilty of fraudulent concealment was one for the jury, there being ample evidence that no fraud was intended or practiced.

3. ———— Implied Warranty. The doctrine of warranty of fitness has no application in such a case; but at any rate there was no such warranty against defects discoverable by an inspection of ordinary care.

Appeal from Clark Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

AFFIRMED.

*Whiteside & Rutherford* and *Walker & McBeth* for appellant.

(1) Any contract, the making of which is induced by the fraud of either party, practiced upon the other at the time the contract was made, or while negotiations in regard to it are being carried on, is voidable, and may be rescinded at the election of the party defrauded. Smith v. Richards (U. S.), 13 Pet. 26, 10 Law Ed. 42; Skinner v. Brigham, 126 Mass. 132; Reed v. Patterson, 91 Ill. 288; Bean v. Hartrick, 12 Me. 262; Camp v. Camp, 2 Ala. 632; Miner v. Medbury, 6 Wis. 295; Bustered v. Farrington (Minn.), 31 N. W. R. 360; Ormsby v. Budd, 72 Iowa 80; Hickey v. Drake, 47 Mo. 369. (2) The fraud may consist either in fraudulent representations or in fraudulent concealment in respect to the subject-matter of the contract. That is, actual fraud consists in a statement of what is false, or the concealment of what is true. 8 Am. and Eng. Ency. of Law (1 Ed.), p. 635; Story's Equity Jurisprudence (3 Ed.), sec. 186; Kerr on Fraud and Mistake, 42; Smith on the Law of Frauds, sec. 1, p. 3, clause "e" and "f." (3) Misrepresentation may consist as well in concealment of what is true as in the assertion of what is false. If a seller conceals a fact that is material to a transaction, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied. Smith on the Law of Frauds, sec. 8; Bank v. Mentzer, 125 Iowa 101. (4) It is a fraud for a man to tell part

of the truth in regard to what he is inquired of and keep back another part which he knows, if disclosed, would prevent the other party from dealing with him, and tell him something else to draw off his attention and prevent further inquiry. Smith on the Law of Frauds, sec. 8, p. 10; Croyle v. Moses, 90 Pa. St. 250; Chamberlain v. Fuller, 59 Vt. 247. (5) Where the seller suppresses a material fact within his knowledge which honesty and good faith required him to disclose, his conduct amounts to a fraud which will be sufficient to authorize the rescission of the contract. Griel v. Lomax, 89 Ala. 420; Stewart v. Cattle Co. (U. S.), 32 Law Ed. 439; Devoe v. Brandt, 53 N. Y. 462.

*W. L. Berkheimer* for respondent.

(1) There were no representations of soundness of the horse, as shown by the evidence. Consequently we say in this case under all the evidence, that the verdict found by the jury, that the rule *caveat emptor,* applies with full force. Moore v. Koger, 113 Mo. App. 428; Anthony v. Potts, 63 Mo. App. 517; June Company v. J. V. Falkenburg, 89 Mo. App. 563; Thompson v. Botts, 8 Mo. 710. (2) There must be a warranty or fraud to make the vendor of a horse, with a secret malady, responsible to the purchaser. The purchaser takes the risk of quality and condition, unless he protects himself from a warranty; or there must be fraud on the part of the vendor. Lundsey v. Davis, 30 Mo. 406. (3) The maxim of the civil law does not prevail, is not recognized in our law, that a sound price implies a sound commodity, for the reason that it is considered as being too restrictive of the right of every man to make the best bargain possible. Lindsey v. Davis, 30 Mo. 409. Recognized in the cases cited in Moore v. Koger, 113 Mo. App. 428.

GOODE, J.—Plaintiff sold and delivered to defendant a bay horse, May 18, 1909, defendant giving a check for $162.50 for the price, but stopping payment of the check, an act which resulted in the present case, brought to recover the price of the horse. The defense is the animal had an incurable disease called heaves, which fact was known to plaintiff at the time of the sale, but was unknown to defendant and was latent so as to be undiscoverable in the opportunity defendant had to examine the horse. As presented on the appeal this defense takes on a two-fold character, to-wit, as cause for rescission of the contract of sale by defendant on the ground of fraudulent concealment of the disease by plaintiff, and, second, as an implied warranty the horse was fitted for defendant's purpose, which was to sell; in other words, was merchantable, when, in point of fact, it was not. The answer says the horse was diseased, unsound and worthless, as plaintiff knew at the time of the sale, though defendant believed it to be sound and free from disease and, before buying, carefully examined and tested it in reference to its soundness, but failed to discover the disease; that plaintiff, knowing defendant was under the impression the horse was sound, and knowing, too, defendant was buying to sell on the market, did not at any time before the sale tell defendant the horse had the disease known as heaves, but fraudulently and deceitfully concealed from defendant said unsoundness; defendant discovered the horse had the heaves a day or two after the purchase and then offered to rescind the sale and return the animal; that plaintiff refused to rescind; wherefore it is averred defendant is not indebted to plaintiff in any sum. Defendant is and all his life has been a dealer in horses; buying, shipping and selling them. His home is in Iowa, but he is in the habit of buying in Missouri, and in Clark county. William Tucker is a livery man in Kahoka, in said county, and he, too, had handled horses all his life; buying, selling, and inspecting them.

His barn in Kahoka was a headquarters for horse deal-
ers and it was defendant's habit when in Clark county
to make use of the barn and to rely considerably on
Tucker's judgment in buying.    Plaintiff  is  a  mail
carrier, whose route is in the county and some twenty-
three miles long.   He owned two horses, a gray and a
bay, which he had long used in carrying mail over the
route.   The record suggests plaintiff  resided  in  the
village of Ashton, where Tucker and Peacock called on
him with the view of buying his horses; or rather, they
were under the impression plaintiff's father owned the
gray horse and asked plaintiff to ascertain if the horse
could be bought from his father.   Thereupon plaintiff
notified them he owned the horse and would sell it. They
bargained awhile about the gray horse and finally
bought it, but during the negotiation they asked plain-
tiff if he would sell the bay horse.   He replied in
language testified by defendant:   "Yes, I will sell him to
you; but I don't think you would buy him; he has had
the distemper and it left his wind a little heavy, but he
is getting better."   Tucker and defendant  said  they
would be back in the afternoon to look at the horse
and went at two o'clock.   Plaintiff drove up with the
bay horse hitched to a cart, showed them first the gray
horse, then Tucker asked him to bring the bay out.
They trotted the latter around a good deal, put a bridle
on him and had him run about two hundred yards and
back, and Peacock said he did not see anything wrong
with his wind; that he seemed to be sound; discovered
no indication he had heaves.   Defendant put him in
Tucker's barn that night and in a day or so after the
horse had been fed hay and bran, found he had the
heaves and demanded plaintiff take him back.   Such
was defendant's version of the sale.   Tucker's was about
the same.   He testified he and defendant ran the horse
around the lot, asked plaintiff if his wind was all right;
plaintiff said he had had the distemper, but defendant
could wind him, and thereupon they ran him; did not

Overhulser v. Peacock.

see any indication of heaves. The witness testified that putting a horse to feed on grass will reduce the heaving; but if he had only been on grass one day, that would not suffice to stop the disease and the horse "would have to be fixed some other way." Tucker testified also he had known the horse for a good while and had tried to buy him. Peacock testified plaintiff told him the horse had been on pasture, but did not say how long; did not say he had been out only one night. A veterinary surgeon put on the stand by defendant, testified heaves was an incurable disease and injured a horse very much; had the same effect on a horse as asthma had on a man; was not hard to detect unless the horse had been doctored; that the disease was occasionally caused by distemper; putting a horse on grass would lessen the symptoms; that if the horse had been on pasture and was then bridled and run a couple of hundred yards and did not show any puffing of the flanks, distention of the nostrils or labored breathing, witness "would think the horse had been fixed—prepared for examination—meaning the heaves had been shut down so the symptoms would not show." Plaintiff testified that after he had priced the gray horse to defendant and Tucker, they asked about the bay horse. Plaintiff told them the bay was not fit to sell or show; that defendant could not buy him, for he was not fit to sell. Tucker asked what the price would be if he was all right. Plaintiff said if he was all right. the price would be $200; but defendant could not buy him; had previously told Tucker the horse was not for sale; had turned the horse on the grass the night before. Tucker insisted witness bring the horse out and show him, but plaintiff said "there is no use, you wouldn't buy him; I know you can't buy him." Tucker and defendant still insisted on seeing him and plaintiff then brought him out. They offered $150 and plaintiff asked $175. They said that was too much, considering the condition he was in—too much money for a heavy horse —plaintiff told them he had the distemper and it had

affected his wind; they ran him about the barn lot a couple of hundred yards or so and back, then looked him over again. Plaintiff could see he was thumping in the flanks, his nostrils were distended; could observe it at the time and it was caused by the distemper; the thumping and distention could easily be discovered when he was sold; afterwards when defendant wanted to rescind the sale, he admitted plaintiff had not misrepresented the horse. Some other testimony was given, conducing to prove plaintiff knew the horse had heaves at the time of the sale.

Complaint is made of the instructions to the jury. The general theory of law on which the case was put to the jury was that it was the duty of the defendant to use ordinary care to discover any defect in the horse; that if he inspected the animal but failed to use ordinary care, and by inspecting carefully would have discovered he was afflicted with heaves, then the defendant could not escape liability for the price, even though plaintiff knew at the time the horse had the disease; or unless defendant had agreed to pay substantially a sound price for the animal; further instructed that though fraud was not presumed, it need not be proved by positive testimony, but might be inferred from all the facts and circumstances in evidence. An instruction requested by defendant and given by the court with a modification which in no way changed its meaning, will perhaps exhibit the way the defense was presented. The jury were told, in effect, that if they believed from the greater weight of the evidence plaintiff knew at the time of the sale the horse had the heaves, and defendant used such care in inspecting as is used by persons buying and selling horses, the time and circumstances considered, and was unable to discover he had the heaves, and plaintiff knew defendant was ignorant of that fact, and knew defendant was buying to sell on the market and $162.50 was a fair market value of the animal, then it was the duty of plaintiff to inform defendant the horse had the

disease, if in fact he had, and unless plaintiff so informed defendant, the verdict should be for the latter.

We perceive no merit in this appeal. Aside from the instructions which were fair and sound, the verdict appears to have been for the right party. According to defendant's own testimony, plaintiff told him when he wished to examine the horse, the animal had had the distemper and it had left his wind a little *heavy*. We supposed the italicized word was used to state the fact that the horse's breathing was not so light as it should be, or was labored, instead of to express the idea that the distemper had brought on heaves. In the abstract of the record when said word is employed to state the horse was afflicted with the disease of heaves, it is spelled *heavey*. But on looking into the transcript we find that spelling nowhere used; instead, in every instance where a witness described a horse with the heaves by using the adjective of the word, the spelling is *heavy* and the horse, or his breathing, is said to be "heavy." We do not find the word "heavey" in the dictionaries; but do find the word "heavy" with this definition, among others: "having the heaves; as a heavy horse." Standard Dictionary, and in Webster's New International: "Heavy; having the heaves." The veterinary surgeon testified heaves might be caused by distemper and it is conceded plaintiff notified defendant the horse had had the distemper and the disease had left his wind heavy. Our impression from the record is that plaintiff gave specific information that the horse's breathing was heavy in the sense that the distemper had left him with the heaves; but it might be he meant his breathing was labored without meaning he had said disease, and defendant so understood—an improbable theory. In instructing the jury the court did not proceed upon the hypothesis that plaintiff told defendant the animal was afflicted with the heaves, nor even submit the issue of whether plaintiff told him, as might properly have been done, at least. The hypothesis of the instructions

rather was that plaintiff had not told this fact, and the jury were instructed to find whether plaintiff was aware of it and fraudulently concealed it from the defendant. The main point urged here is that if plaintiff knew the horse had heaves, he was bound, in every event, to notify defendant of the fact; was, *ipso facto,* guilty of a fraud if he did not, regardless of whether the disease was detectible by an ordinary inspection, or of the price defendant was to pay. In our opinion this proposition is not the law, and, moreover, is inconsistent with instructions asked by defendant. Defendant insisted on seeing the horse against plaintiff's wish, and bought on his (defendant's) own judgment, and that of the expert he had with him after full inspection and, according. to his own version of what occurred, after statements by plaintiff about the condition of the horse which, on any view of what was said, should have induced the most cautious examination. Moreover, defendant was told if the horse was sound, plaintiff's price would be two hundred dollars, and a much lower price was paid. For silence in respect of a defect in an article to afford ground for rescission by the buyer, when he buys on his own judgment and no warranty is given, the silence must be attended by circumstances which render it a fraud— there must be some agreement or relationship that makes it the duty of the seller to divulge the defect. [Benjamin, Sales (4 Ed.), p. 448.] At most the issue of fraudulent concealment by plaintiff was for the jury, as there was ample evidence that no fraud was intended or practiced.

It is contended plaintiff impliedly warranted the fitness of the horse for the market. We incline to think the doctrine of warranty of fitness has no application to the case; but at any rate, there was no such warranty against defects discoverable by an inspection of ordinary care, and the instructions held plaintiff responsible if the disease could not have been discovered by using that

degree of care in making the examination. [Lindsay v. Davis, 30 Mo. 406; Moore v. Koger, 113 Mo. App. 423, 87 S. W. 602; Colchord v. Foundry Co., 131 Mo. App. 540; Grojean v. Darby, 135 Mo. App. 586, 116 S. W. 1062.]

The judgment is affirmed. All concur.