## CHESAPEAKE & POTOMAC TELEPHONE COMPANY *vs.* RICHARD H. MERRIKEN.

*Injury to Automobile Occupant—Contributory Negligence— Directing Verdict.*

In dealing with the question whether upon all the evidence plaintiff was as a matter of law guilty of negligence contributing to the accident, it is necessary to assume the truth of all the evidence tending to support the plaintiff's claim, together with such inferences as may naturally and legitimately be drawn therefrom.                                    p. 574

In an action by one injured while riding in a car driven by another, it appearing from the undisputed evidence that plain-

tiff neither owned nor controlled the car, and that he was asleep at the time of the accident, the doctrine of imputed negligence was inapplicable.                                    p. 576

In an action by one injured while riding in an automobile driven by another, the grant of a prayer, which correctly stated that the doctrine of imputed negligence was not applicable to the facts of the case, *held* not objectionable as stressing too emphatically that such other operated and controlled the car at the time of the accident, and thereby obscured the fact that plaintiff was asleep at the time.                     pp. 576, 577

To justify a court in characterizing conduct as negligent in law, it must involve some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ.                                       p. 577

Contributory negligence, like primary negligence, is relative and not absolute, and being relative it is dependent on the particular circumstances of each particular case.         p. 577

Plaintiff, riding in an automobile driven by another, which collided with an object within the travelled way of the road, at a curve therein, was not as a matter of law guilty of negligence contributing to the accident, merely because he was asleep at the time, it not appearing that, when plaintiff fell asleep, the driver was driving at an excessive speed or in a negligent manner, or that plaintiff could have prevented the accident had he been awake.                                      pp. 578, 579

In passing upon the question of plaintiff's negligence, however, the jury were entitled to consider the circumstance of his being asleep, together with the other circumstances of the case.
                                                     p. 578

One invited to drive in another's automobile, having no reason to believe that the driver of the car was not a safe and prudent driver, or that he did not know the road and its dangers, was not guilty of negligence because he failed, before starting, to warn the driver of the dangers of the road.
                                                  pp. 579, 580

*Decided February 26th, 1925.*

Appeal from the Circuit Court for Cecil County (WICKES and KEATING, JJ.).

Action by Richard H. Merriken, an infant, by Manning Merriken, his father and next friend, against the Chesapeake & Potomac Telephone Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Shirley Carter*, with whom were *Bernard Carter & Sons* on the brief, for the appellant.

*T. Alan Goldsborough*, with whom were *Calvert C. Merriken*, *William P. Constable*, *Henry L. Constable*, and *Omar D. Crothers* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The appellee in this case was injured at about midnight July 14th, 1921, in a collision between an automobile in which he was being driven and a guy pole owned by the appellant located within the outlines of the state road, a public highway in Caroline County, Maryland, at a point where the road makes a sharp bend or curve; and this suit was brought by him through his father and next friend to recover for those injuries. The case was tried in the Circuit Court for Cecil County, to which it had been removed and, the verdict and judgment being in favor of the plaintiff, the defendant appealed. The record contains one exception, and the controlling question which it presents for our consideration is whether upon all the evidence in the case the appellee was as a matter of law guilty of negligence contributing to the accident complained of. In dealing with that question upon the defendant's prayers we must assume the truth of all evidence tending to support the plaintiff's claim, together with such inferences as may naturally and legitimately be drawn therefrom. Thus dealt with these are the facts:

On the night of the accident Richard H. Merriken, who was then twenty years of age, with Alvin Brown and Clarence Pense was driven by Leslie Lee from Denton, where he

then lived, to Oyster Shell Point to a dance. Lee was a licensed driver and the car which he drove belonged to his father, although he drove it constantly. At a point on the State Road, near Williston, the road curves or bends sharply, and about thirty-seven feet north of the center of the curve in the direction of Denton, on the easterly side of the road, there was a guy pole to which the appellant's telephone pole on the opposite side of the road was attached to lessen the strain placed on it by the curve. The road at that point was of tarred macadam, and the distance, measured across it between the guy pole on the east side of it and the telephone pole on the opposite side, was said to be twenty-two and one-half feet. The guy pole was within the travelled way of the road, with the tracks of passing vehicles within a hand's breath of it, and so placed that one driving an automobile approaching it from the south would not be able to see it at night by the lights of the machine until he had turned the corner, and the curve or bend was so sharp that machines passing it in a northerly direction at a speed of from fifteen to twenty miles an hour might skid and be forced into contact with it.

On the night of the accident Lee, who lived at Hobbs in Merriken's neighborhood, drove Merriken, Brown and Pense to Oyster Shell Point to the dance referred to. They left the dance to return to Denton between eleven thirty and twelve o'clock. On their return Lee drove and occupied the left front seat, and Brown the right front seat. Merriken and Pense occupied the rear seats, and some time before they reached the curve to which we have referred they both fell asleep.

Merriken was quite familiar with the road, but prior to that night Lee, the driver, knew nothing of it at all, although he had not communicated that fact to Merriken.

Lee testified that he approached the curve referred to at about fiften to twenty miles an hour, that he saw no warning post or sign and that, when he reached it, he found it too abrupt to take and was about to drive into a field when he

saw the pole in such a position that he could not do that, and he then attempted to drive around the curve, but in that effort his car skidded into contact with the pole, smashing the rear wheels of the automobile and injuring Merriken.

Many of these facts were disputed and were contradicted by other testimony. For instance there was evidence that the pole was not in the travelled way of the road, that when Lee approached the curve he was driving at from thirty to thirty-five miles an hour, and that at the center of the curve there was placed as a warning of danger a striped post referred to as a barber pole. But as it was the exclusive function of the jury to resolve that conflict, it is unnecessary for us to refer further to it.

At the close of the whole case the plaintiff offered three prayers of which the second and third were granted, and the defendant five, of which the third, fourth and fifth were granted. All the other prayers were refused. The plaintiff's third prayer was the damage prayer usual in cases of this character, and was unobjectionable. His second prayer, while inartificial in form and really inapplicable to the facts of the case, could not possibly have injured the defendant. In substance it instructed the jury that if they found that Lee was in control of the car when the accident happened and that the plaintiff had no control over it, and that no negligence of his contributed to the accident, that Lee's negligence could not be imputed to him. The defendant did not contend that the doctrine of imputed negligence applied to the facts of this case and, as it appeared from the uncontradicted evidence that the plaintiff neither owned nor controlled the automobile and was asleep at the time of the accident, it must be conceded that it did not. *Dorchester County v. Wright,* 138 Md. 577. And as the prayer did no more than state a principle which could not have been denied, it is difficult to see under the facts of this case how it could have injured the defendant. The defendant objects to it, however, on the ground that it stresses too emphatically the fact that Lee operated and controlled the car at the time of the accident

and thereby obscures the fact that Merriken was asleep at that time, but we see no force in that objection. Operation, ownership and control are essential elements in the doctrine of imputed negligence, and if it is to be defined at all they cannot well be ignored, and if defendant objected to the prayer because it did not sufficiently define negligence, that objection should have been specially made in the trial court.

The real question presented by the appeal, however, is raised by the refusal of the defendant's first and second prayers, and it is this: Was the plaintiff guilty of contributory negligence as a matter of law (a) because he fell asleep, or (b) because he did not before he fell asleep warn the driver of the car in which he was riding of the dangerous curve?

To justify a court in characterizing conduct as negligent in law it must involve some "prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ." *Waltring v. James,* 136 Md. 414. The ingredients of contributory negligence do not differ in any respect from those of primary negligence, it is, after all, "like primary negligence, relative and not absolute, and being relative it is dependent on the peculiar circumstances of each particular case. There are many acts which would not be negligent when done under some conditions, though the same acts if done under different conditions might be highly negligent. And this is equally true of contributory negligence. So ultimately, in every case of this character it becomes necessary to view the entire surroundings to determine whether either primary or contributory negligence has been established." *McNab v. United Railways Co.,* 94 Md. 724. These principles have been so often and so recently stated by this Court that it is unnecessary to do more than refer to *Merrifield v. Hoffberger Co.,* 147 Md. 134, and *Pearson v. Lakin,* 147 Md. 1, in which Judge Digges and Judge Parke respectively speaking for this Court collected and reviewed the later decisions involving them.

Applying these principles to the facts of this case, the

defendant's first and second prayers were properly refused. It cannot be said as a matter of law that the defendant was guilty of negligence directly contributing to the accident merely because he was asleep at the time it happened, although the jury were entitled to consider that circumstance in passing upon the question of his negligence together with the other circumstances of the case. There is nothing in the record to indicate that Merriken knew that Lee was unfamiliar with the road, they both lived in the same neighborhood, he was in the car as Lee's guest and passenger, and he may well have believed that when Lee started from Oyster Shell Point to Denton that he knew the road there, especially as Lee had on that same night driven him from Denton to Oyster Shell Point. In the absence of any evidence to justify such a conviction he was not conclusively bound to presume that Lee would operate the car in a negligent, reckless or imprudent manner, or that he would drive over a strange road at such a speed as would endanger his passengers or that he would disregard such plain and obvious warnings of danger as the black and white striped posts or "barber poles," one of which, according to the testimony of some of the witnesses, was placed at the center of the curve where the accident occurred.

We do not understand that the law requires all the passengers in an automobile to exercise the same degree of vigilance and caution in apprehending and detecting danger to an automobile over which they have no control as is required of the person driving it. Such a requirement would be in many instances impracticable, and compliance with it would often promote rather than prevent accident. Of course, if there is an apparent danger known to the passenger, or which by due care he might discover, and he suffers the driver to incur it without warning or protest, his conduct may well be called negligent, but no such conditions exist in this case. The danger here was of a character which every driver of an automobile commonly and frequently encounters, and which may by the exercise of ordinary care and prudence be

avoided.   He was not alone, there was with him on the seat
by his side another passenger who actually did warn him as
they approached the curve, although Lee said he did not hear
the warning.

From some of the evidence in the case the jury may have
believed that the accident occurred through the concurring
negligence of Lee and the appellant, Lee in operating the car
in a reckless and dangerous manner at the time of the acci-
dent, and the appellant in placing its pole in such a position
as to menace the safety of the travelling public.   But it does
not appear that when Merriken fell asleep Lee was driving at
an excessive speed, or in a negligent manner.   The accident
occurred in rounding the curve, but it is not apparent that
Merriken, even if he had been awake and watching, could have
from his position on the rear seat have seen the curve when
they reached it in time to have warned the driver that he was
approaching it, because not only were Lee and Brown in
front of him, but they had the advantage of the lights of the
machine which he had not.   The hour was late, it was not
apparent that he could have prevented the accident had he
been awake, and, under such circumstances, we cannot say
that in allowing himself to fall asleep he was guilty of con-
tributory negligence as a matter of law.

Much of what we have said applies also to the contention
that he was negligent as a matter of law because he did not
warn Lee before he started from Oyster Shell Point to Den-
ton of the dangers on the State Road.   The record fails to
show that Merriken had any reason to believe that Lee was
not a reasonably safe and prudent driver, or that he did not
know the road, and its dangers.   Certainly it would be going
very far to require that every guest invited to ride in an
automobile should, under the circumstances of this case,
before accepting the invitation point out to his host the
dangers of the road, under penalty of being charged with neg-
ligenc in law for any failure to do so.   In our opinion that
is not the law, and our attention has been called to no au-
thority which could justify our recognition of it as such.

Certainly the cases relied upon by the appellant do not do that. *Balto. & O. v. McCabe,* 133 Md. 224; *Wash., B. & A. R. Co. v. State,* 136 Md. 11; *Chiswell v. Nichols,* 137 Md. 305; and *Dorchester County v. Wright,* 138 Md. 580, not only did not decide that, but in those cases the Court was dealing with instances where the conduct of the driver and its likely consequences were or should have been apparent to the guest at or about the time of the accident, while in this case, if the accident was due to the driver's conduct, the passenger was not aware of it at the time, he was not bound to anticipate it, and it is not clear that he could by the exercise of ordinary care have learned of it in time to have warned the driver to avoid it.

It follows from what we have said that the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*