MICHAEL F. AUSHERMAN *v.* JULIUS FRISCH.
[No. 84, October Term, 1932.]

*Decided January 18th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*C. P. Humer* and *Holden S. Felton,* for the appellant.

*Abram C. Joseph,* with whom were *Benjamin B. Rosenstock* and *Daniel C. Joseph* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Circuit Court for Frederick County entered upon a verdict of the

jury for the appellee for damages for injuries resulting to the plaintiff from a collision between the plaintiff's four-passenger Buick coupé and the International truck of the defendant, appellant. The scene of the accident was the main state highway leading from Frederick to Hagerstown, the point of contact being about a mile and a half west of Middletown, Frederick County. The plaintiff was a traveling salesman covering a territory made up of parts of Western Maryland and Southern Pennsylvania. His home is in Baltimore. The time of the accident was about 7.30 o'clock on the morning of Monday, October 27th, 1930. It was a clear day and the road was dry.

There are four exceptions in the record, three to rulings on evidence and one to the court's action in respect to the prayers. The plaintiff offered only one prayer, it being as to the measure of damages; and the defendant offered nine prayers, all of which were granted except the first, second, sixth, and ninth. The defendant filed a special exception to the plaintiff's damage prayer, which exception was overruled. The defendant's first and second prayers, which were rejected, asked a directed verdict in favor of the defendant, the first on the theory that there was no evidence in the case entitling the plaintiff to recover, and the second on the theory that the plaintiff was guilty of such contributory negligence that, as a matter of law, he was precluded from recovery. We have no hesitancy in concluding that the rejection of these two directed-verdict prayers was proper. We deem it unnecessary to cite the many decisions of this court in support of the settled rule that, in passing upon a prayer which is a demurrer to the whole evidence, the evidence supporting the contention of the plaintiff, and all favorable inferences which can legitimately and reasonably be drawn therefrom, must be taken as established and proved. There is abundant testimony in the record to support the contention of the plaintiff that the accident was caused by the negligence of the defendant, without any negligent act of the plaintiff contributing thereto. There is some evidence which, if believed by the jury, would support a verdict in his favor. This

contradiction or conflict in the evidence makes it a typical jury case, and compels its submission to that body for a decision, whose verdict under such conditions cannot be disturbed by this court.

As to contributory negligence, the appellant contends that the appellee was operating his car at an excessive and unlawful rate of speed, which negligence directly contributed to his own injury. On the question of speed, there is no direct testimony offered by the defendant as to the rate of speed at which the plaintiff's automobile was being driven, but it is argued that the physical facts show that the speed was excessive and unlawful. The physical facts relied on are found in testimony by two of defendant's witnesses as to skid marks on the road caused by the application of the brakes to the plaintiff's car, in proximity to the point of contact, and the position of the plaintiff's car thereafter. The existence of skid marks is flatly denied by the state policeman, a witness for the plaintiff, who arrived shortly after the accident, having been telephoned for by the plaintiff. The witness Shipley and the plaintiff testified that he was not exceeding the lawful rate of speed, it being not more than thirty-five to thirty-eight miles an hour. It will thus be seen that excessive speed of the plaintiff's car, relied upon by the defendant as the prominent act of negligence contributing to the accident, is not an established fact, but, on the contrary, is strongly controverted by the plaintiff's evidence. In *Yockel v. Gerstadt,* 154 Md. 188, 140 A. 40, it is said: "This court has repeatedly and uniformly held that to constitute contributory negligence as a matter of law, the negligent act of the plaintiff relied on must be prominent, decisive, and one about which ordinary minds would not differ in declaring it to be negligence. The act must present such features of negligence as to leave no opportunity for difference of opinion in the minds of ordinarily prudent men as to its imprudence." And cases therein cited. If the alleged excessive and unlawful speed of the plaintiff's car had been established, before the court could direct a verdict for the defendant on the ground of contributory negligence,

it must have been in addition shown that such speed directly contributed to the accident. Contributory negligence, like primary negligence, is not absolute but relative, and necessarily depends upon the particular circumstances of each case. *Siejak v. United Rys. & Elec. Co.*, 135 Md. 367, 109 A. 107; *Chesapeake & Pot. Tel. Co. v. Merriken*, 147 Md. 572, 128 A. 277; *Yockel v. Gerstadt, supra*. The defendant's fourth prayer, which was granted, submitted the question of contributory negligence to the jury in as favorable a manner as he was entitled to have it; and his second prayer was properly rejected.

The defendant's sixth prayer was rejected. It instructed the jury that, if they find the defendant "did not cross the center line of the road in his attempt to make a left-hand turn into the private driveway of W. H. Gaver, the plaintiff has failed to make out his cause of action, and the verdict must be for the defendant." The effect of such an instruction was to tell the jury that, if they found the defendant's truck did not cross the center line of the road, the defendant was free from all negligence. The appellant in his brief makes no argument in support of the correctness of the proposition contained in the prayer. It segregates one fact, and bases a verdict for the defendant upon the finding of that fact. Even if it be conceded that under the circumstances of this case such an instruction would be correct, in our opinion its rejection is not reversible error, because of instructions contained in other granted prayers of the defendant fully covering this point. *Balto. & O. R. Co. v. Boteler*, 38 Md. 568; *Spencer v. Trafford*, 42 Md. 1; *Caledonian Fire Ins. Co. v. Traub*, 86 Md. 86, 37 A. 782; *Horner v. Parkhurst*, 71 Md. 110, 17 A. 1027; *Regester v. Medcalf*, 71 Md. 528, 18 A. 966; *Etchison v. Etchison*, 53 Md. 348.

The special exception to the plaintiff's first prayer, which was overruled, and the rejection of the defendant's ninth prayer, raise the same question, the contention being that there was no evidence of the plaintiff's physical condition before the accident, and that, therefore, the jury could not

properly consider his condition after the accident in assessing damages. There is testimony describing the plaintiff's condition as a result of the accident, both medical and lay, such as the force of the impact rendering the plaintiff unconscious, necessitating his spending five days in the hospital, and later being confined to his bed over a period of two to two and a half months, causing nausea and vomiting over a long period of time, shocking his nervous system, disabling him from pursuing his occupation as a salesman; "I am selling neckwear and silk wraps; every time I pick them up I get giddy, can hardly lift them, have to have people helping me all the time." It is true that there was no direct testimony that these conditions did not exist before the accident; but they are testified to as being the result of the accident, or caused by the accident. We think that the necessary and compelling inference from such testimony must be that they did not exist before the accident. This form of prayer has been previously employed in cases before this court. *Ashman's Prayers and Instructions,* p. 166; (Form 276 being plaintiff's fourth prayer in the case of *Dorchester County Commrs. v. Wright,* 138 Md. 577, 114 A. 573). In *Balto. Traction Co. v. Wallace,* 77 Md. 435, 26 A. 518, the plaintiff's sixth prayer was identical with the prayer now under consideration, and was specifically passed upon and approved. In *Balto. & O. R. Co. v. Kean,* 65 Md. 394, at page 401, 5 A. 325, 328, in passing upon this prayer, which was the plaintiff's third prayer, the court said: "Nor is there the slightest objection apparent from the phraseology of plaintiff's third prayer. It enunciates a rule in relation to the measure of damages which has been sanctioned by the courts in all such cases, and it was, therefore, properly granted."

The theory of the plaintiff's case is that the accident was caused by the negligence of the defendant in making a left-hand turn with a truck twenty-six feet long from the south side of the road across the north side thereof, for the purpose of entering a lane leading from the north side, and directly in the path of the plaintiff, without warning, and so sud-

denly that it was impossible for the plaintiff to avoid a collision by the exercise of ordinary care. There is ample testimony in the record to support that theory. The road at the point of collision runs approximately east and west, the hard surface being twenty-one feet in width. The plaintiff was proceeding in a westerly direction on the north side (his right side) of the road. The defendant was proceeding east, on the south side of the road. His business was hauling milk. The entrance to the house of one of his customers, Mr. Gaver, was on the north side of the road, and the point where the lane from that house entered the state road was the point of contact. The defendant had in the truck some empty milk cans, which it was his purpose to leave at Mr. Gaver's place, and for which purpose he was obliged to cross the road from south to north. About 130 feet east of Gaver's lane is the low point between two hills, one descending from the east at a 3.5 per cent. grade, and the other from the west at 7.3 per cent. The down-grade, coming to the low point, from both directions, is of considerable length; the one going west having been testified to as being 700 feet. The point of collision is not at the low point of the grades, but 130 feet west of that point, or toward the direction from which the defendant was coming. It is thus shown that at the time of contact the plaintiff was going up, and the defendant coming down, a 7.3 per cent. grade. The testimony on behalf of the plaintiff is that, before he reached the low point of the grade going west, he saw two trucks, one of which was the defendant's, "racing" down the hill; that the other truck passed the defendant's truck shortly before he reached them, and immediately thereafter the defendant turned suddenly across the road from south to north, entirely blocking the plaintiff's right of way; that he endeavored to prevent a head-on collision, which would have occurred had he continued in the course he was then pursuing, by applying brakes and turning to the left; that this action did not prevent the contact, the right corner of the defendant's front fender striking the right rear fender and wheel of the plaintiff's car; that when

the two machines were brought to a stop, the defendant's truck was entirely across the road, facing north, at the entrance of Gaver's lane, while the plaintiff's car was facing south, the front of it resting against a fence, constructed by the State Roads Commission about two feet from the south side of the road, to protect against a descent of from ten to twelve feet on that side of the road.

On the other hand, the theory of the defendant is that the truck at all times remained south of the center of the road, and that the plaintiff, for no apparent reason, left the north side of the road, which was entirely clear, and "plowed into" the truck. The law governing the defendant's theory of how the accident happened was fully covered by his granted prayers; but the jury believed the evidence which supported the plaintiff's theory of the accident, which they were at liberty to do, and rendered a verdict accordingly.

The date of the accident was October 27th, 1930, and the date of the trial February 8th, 1932. Dr. Irving J. Spear examined the plaintiff on December 1st, 15th, and 18th, 1930, December 4th, 1931, and February 2nd, 1932. Testifying for the plaintiff, he was asked: "Will you tell his Honor and the gentlemen of the jury in your own words the condition in which you found him on your first visit?" Objection was interposed and overruled, to which ruling exception was noted. The doctor was qualified to answer the question; and there was no error in permitting him to do so.

The second exception is to a question practically identical with the one just asked. The ground for the exception, as stated in the appellant's brief, is that the question should not have been allowed because it had been previously answered. This was entirely within the discretion of the trial court; and no proper exception could be taken to the court's allowing the witness to answer again the same or a similar question.

The third exception arose in this manner: After having Mr. Katz, the state policeman, a witness for the plaintiff, identify Mr. Gaver and Mr. Toms, two witnesses for the

defendant who had come from Gaver's house to the scene of the accident and were present with Katz, he was asked: "Q. Isn't it a fact Mr. Gaver and Toms called your attention to the burnt marks on that road that began clear up at McBride's mail box ten feet beyond the mail box, about 208 feet distance from there to the point of the accident? Didn't Mr. Gaver and Mr. Toms point out those burnt marks to you? A. I never went over twenty feet east of the accident at no time. Q. Do you deny that they pointed out the burn marks to you? A. I don't recall it, no, sir. Q. Will you say they did not? A. I remember some talk about it at the magistrate's hearing. Q. I am talking not about the magistrate's hearing. I am talking about out there that morning at the scene of the accident. Isn't it a fact Mr. Gaver and Toms pointed out to you the burn marks? A. No, sir. Q. And didn't you say 'they are only forty feet long' and didn't Mr. Gaver offer to bet you they were over 200 feet long? A. The only footage that was considered was the distance from the culvert to the accident. Q. Wasn't there footage about the burn marks? Do you deny that Mr. Gaver offered to bet you that the burn marks were more than forty feet? A. Didn't offer to bet me nothing. Didn't have no money."

Later, when the defendant was on the stand under direct examination, he was asked: "Q. Did either Mr. Gaver or Mr. Toms or both of them point out the burn marks to the officer? A. Mr. Gaver did. Q. For what distance did those burn marks extend? Did you measure them? A. No, I didn't measure them. Q. You didn't make any measurements of them? A. No, sir. Q. Did Mr. Gaver tell Mr. Katz in your presence that they were more than forty feet long?" (An objection interposed by the plaintiff was sustained.)

We find no error in this ruling. The point of inquiry from this witness at that time was the length of the "burn marks"; and, in endeavoring to show that measurement, the witness having said that he did not measure them, he was asked if Mr. Gaver did not tell Mr. Katz, the policeman, in the witness' presence, that they were more than forty feet

long. It is contended that this was a question the purpose of which was to impeach the witness Katz. In our opinion, it was not; but was an inquiry seeking to establish the distance the plaintiff's car had skidded, or the length of the "burn mark" thereby made; and it was natural for the lower court so to understand it.

Finding no error, the judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*