(Decided March 26th, 1895.)

---

# THE LAKE ROLAND ELEVATED RAILWAY COMPANY *vs.* JOHN McKEWEN.

*Contributory Negligence—Withdrawing Question from the Jury— Right to use of Streets.*

When in an action to recover damages for an injury alleged to have been caused by the defendant's negligence, the defendant contends that the injury was caused by the plaintiff's contributory negligence, the question should not be withdrawn from the consideration of the jury unless the conduct of the plaintiff, relied on as amounting in law to contributory negligence, is established by clear and uncontradicted evidence.

Although the plaintiff in this case was guilty of contributory negligence in attempting to drive across the tracks of the defendant, an electric railway company, without slacking his speed and looking in both directions as soon as he was able to do so, in order to see if a car was approaching from either direction, yet, if the motorman of the car could have seen that the plaintiff was about to cross in front in a position of danger, and could by the exercise of reasonable care have avoided the injury, then the defendant is liable.

A street car has not a right of way on its tracks paramount to that of an ordinary vehicle. Neither has a right superior to that of the other, but each must exercise its right to use the street with due regard to the rights of the other.

Appeal from the Superior Court of Baltimore City. This was an action to recover damages for injuries to plaintiff's person and property alleged to have been caused by defendant's negligence. The evidence showed that the plaintiff,

driving west, in the day time, on Chase street, in Baltimore City, attempted to cross the tracks of the defendant, an electric railway company, on Guilford avenue, at the intersection of Chase street. The elevated portion of the railway begins about seventy-five feet south of Chase street, on Guilford avenue, and there is a down grade from that structure to Chase street. Plaintiff was driving a buggy, with the top lowered, at a slow trot, and upon arriving at Guilford avenue he turned his head south, to the left, to see if a car was coming down the elevated track, and then, hearing a rumbling noise, he looked quickly to his right and saw a car of the defendant coming rapidly towards him from the north. He endeavored to pull his horse out of the way, but the car struck the horse, cutting off one of his feet, and the plaintiff was thrown out of the vehicle and injured. Plaintiff did not lower his speed upon approaching the tracks, and did not look north, to his right, until after he heard the noise of the approaching car, when he was on the tracks. Had the plaintiff looked to the north on reaching the building line of Guilford avenue, he would have had an unobstructed view of the railway for two blocks, and could have seen the car.

The evidence on the part of the plaintiff was to the effect that no gong was sounded on the car as it approached Chase street, and that it was running at a much greater speed than that permitted by the city ordinances. But this was contradicted by the defendant's witnesses, who also testified that the plaintiff was driving rapidly and ran into the car.

The defendant offered the following prayers:

*Defendant's 1st Prayer.*—That there is no legally sufficient evidence in the case from which the jury can find that the injury complained of resulted from the negligence of the defendant or its servants, and the verdict of the jury must therefore be for the defendant. (Rejected.)

*Defendant's 2nd Prayer.*—That it appears from the uncontradicted evidence in the cause that the plaintiff, by his

own negligence, directly contributed to the happening of the injury complained of; and the verdict of the jury must therefore be for the defendant.   (Rejected.)

*Defendant's 3rd Prayer.*—The defendant prays the Court to instruct the jury that if they believe from the evidence that the plaintiff could have avoided the happening of the injury complained of by the exercise of ordinary care on his part, then their verdict must be for the defendant.  (Rejected.)

*Defendant's 4th Prayer.*—The defendant prays the Court to instruct the jury that if they believe from the evidence that if the plaintiff could have avoided the happening of the injury complained of by the exercise of ordinary care on his part, then their verdict must be for the defendant, even though they should further find that the defendant's agent was guilty of negligence.   (Rejected.)

*Defendant's 5th Prayer.*—The defendant prays the Court to instruct the jury that if they shall believe from the evidence that the accident was directly caused by the concurrent negligence of the plaintiff and the said defendant, and that it could have been avoided by due and proper care on the part of either said plaintiff or said defendant, then their verdict must be for the defendant, without regard to whose negligence was greater.   (Rejected.)

*Defendant's 6th Prayer.*—The defendant prays the Court to instruct the jury that if they shall find from the evidence that the plaintiff was in the habit of crossing the tracks of the defendant at the corner of Guilford avenue and Chase street, and knew that the electric cars of the defendant were passing and repassing on said tracks at short intervals and at six miles an hour, then it was the duty of the plaintiff, at the time of the happening of the injury complained of, to look in both directions, up and down the street, to observe the movements of the cars of the defendant; and if the jury shall find that the plaintiff did not so look, and that the injury would not have happened if he had so looked, then their verdict must be for the defendant.   (Rejected.)

*Defendant's 8th Prayer.*—The defendant prays the Court to instruct the jury that if they shall find from the evidence that the motorman of the defendant saw the plaintiff driving slowly along Chase street, approaching the track upon which the defendant's car was running, seated in an open buggy, then the motorman had the legal right to assume that the plaintiff saw the approach of the defendant's car, and that he would not attempt to cross the track in front of the defendant's car, but would stop and allow the defendant's car to pass.   (Rejected.)

*Defendant's 9th Prayer.*—The defendant prays the Court to instruct the jury that it is the duty of a person crossing an electric street railway, on a city street, to look in both directions to observe whether a car is approaching before driving upon the track, and a failure to do so is negligence *per se*, and the facts, if the jury shall find them as facts, that the defendant's car was traveling at a rate of speed not authorized by law, or that the motorman was not ringing his gong, do not excuse the plaintiff from the duty of looking in both directions.   (Rejected.)

*Defendant's 10th Prayer.*—The defendant prays the Court to instruct the jury that a street car has a right of way on that portion of the street upon which alone it can travel, paramount to that of ordinary vehicles.   (Rejected.)

*Defendant's 11th Prayer.*—The defendant prays the Court to instruct the jury that the burden of proof is upon the plaintiff to show that the motorman of the defendant did not use reasonable care to avoid the consequences of the negligence of the plaintiff.   (Granted.)

The Court below (RITCHIE, J.), granted the 11th prayer of the defendant and rejected all of its other prayers, and also granted the following prayer of the plaintiff:

*Plaintiff's 4th Prayer.*—That if the jury shall find a verdict for the plaintiff, in estimating the damages they are to consider the physical condition of the plaintiff before the injury complained of as compared with his present condition in consequence of said injury, and whether the said injury

is in its nature permanent, and how far it is calculated to disable him from engaging in those employments and pursuits for which, in the absence of such injury, he would be qualified, and also the physical and mental suffering to which he was subjected by reason of the said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which he has sustained, and also the value of the horse driven by said plaintiff at the time of the accident, and any damage to his buggy and harness due to the said accident.

The Court then instructed the jury as follows:

*Court's Instruction.*—"The Court instructs the jury that the plaintiff, being familiar with the crossing of defendant's electric road at the corner of Chase and North streets, and approaching the same on Chase street from the east, in a buggy with the top lowered, at the rate of about four miles an hour, was guilty of contributory negligence in attempting to cross the tracks of said road without lowering his rate of speed and without looking to the north, and without paying any attention whatever to the possibility of the approach of a car from that direction, or making any inquiry or effort to ascertain whether or not a car was approaching from said quarter, until his horse was upon the second or westerly track, it appearing that the plaintiff, had he looked to the north when he reached the east building line of North street, would have had an unobstructed view of the railroad for two blocks, and could have seen the car in question, and that he therefore is not entitled to recover, unless the jury believe from the evidence that the motorman of the car in question, after he saw, or by the exercise of due care might have seen that the plaintiff was approaching the tracks and was apparently about to cross in front of his car, and that the attempt to do so would be dangerous to the plaintiff, might still, by the exercise of reasonable care in the management of said car, have avoided the collision, but failed to exercise said care."

The jury rendered a verdict for the plaintiff for $200, and from the judgment thereon the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Francis K. Carey* (with whom were *John N. Steele* and *John E. Semmes* on the brief), for the appellant.

The undisputed facts, which are fairly summarized in the Court's instruction, entitled the appellant to a verdict, whether it was guilty of negligence or not either before or after the appellee had negligently placed himself in a position of danger.

The appellant's car, which ran over the horse's foot, was stopped by the appellant's motorman in the middle of the bed of Chase street, so as to practically make it impossible for the appellee to cross Guilford avenue, and when the car came to a dead stop the horse and buggy were still on the east side of the car, and the buggy was standing opposite, about the middle of the car. The car did not run into the appellee, but the appellee ran into the car.

It is the undisputed testimony that the appellee was going about four miles an hour, which is hardly more than a rapid walk. The appellee describes his horse's gait as a "jog trot." He had, therefore, full control of his horse, and the motorman would naturally infer, until the appellee had actually allowed his horse to get upon the southbound track, that it was his intention to halt and permit the car to pass.

There is no evidence in the case tending to show that the appellant was guilty of negligence, either before or after the appellee recklessly placed himself in a position of danger. The following general rules are so well established in this Court that it is only necessary to state them:

(1.) The burden of proof is upon the plaintiff to show that the injury complained of was the direct consequence of the defendant's negligence, and there is no *prima facie* presumption of negligence from the fact than an accident happened. *Stebbing's case,* 62 Md. 515; *Dyrenfurth's case,* 73 Md. 374. (2.) A mere *scintilla* of evidence will not justify

the Court in sending a case to a jury, nor is evidence which simply gives opportunity for conjectures or surmises sufficient for that purpose. *Savington's case,* 71 Md. 599. (3.) It is necessary for the plaintiff to offer evidence tending to prove that the accident resulted from the want of some precaution which the defendant might or ought to have resorted to, and to show with reasonable certainty what particular precaution should have been, and was not, taken to avoid the accident. *Stebbing's case (supra.)*

The testimony of the witnesses for the appellant affirmatively establish the lawful speed of the car, the ringing of the gong, the reversal of the current and the application of the brake as soon as it·was apparent that the appellee was rushing upon danger, and the stoppage of the car in an incredibly short distance before the middle of the car had passed the buggy in which the appellee was sitting.

The gross negligence of the appellee being undisputed, the case should have been taken from the jury, because there was no evidence that the appellant failed in any respect to use ordinary care to avoid the consequences of the negligence of the appellee.

It surely will not be contended that an electric car, authorized (for the public purpose of securing rapid transit) to cross open streets at six miles an hour and to travel between streets at ten miles an hour, is required to slow up or stop whenever the motorman sees a foot passenger or a vehicle *approaching* a street crossing. That the motorman should exercise constant watchfulness in traveling at such speed through the streets of a city, is plain. But if the speed of the car is to be reduced or the car is to be brought to a stop simply because there is a *possibility* that a man should be so lost to the instincts of prudence as to walk or drive suddenly across the track in front of a car, it would be impossible for the company to serve the demands or convenience of the public. A motorman is no more required to assume that a man will rush into certain danger than he is to assume that he is drunk or crazy.

The conduct of the appellee, with full knowledge of the locality, in omitting to look in the direction of the approaching car (the tracks being in full sight for two squares), or to pay any attention to the possibility of its approach, or to make any inquiry or effort to ascertain whether it was approaching until too late to save himself, was so grossly negligent as to disentitle him to recover, whether the appellant was negligent or not in its conduct. The appellant claims that this proposition is sustained by the recent decision of this Court in the case of State, use of *Dyrenfurth* v. *B. & O. R. R. Co.*, 73 Md. 374, 377.

The proposition of law for which the appellant contends has been fully sustained, in its application to cable and electric street railways, by the Courts of New York, Pennsylvania and other States. *Whelahan* v. *Phila. Traction Co.*, 150 Pa. St. 187, 190; *Ehrisman* v. *Harrisburg Ry. Co.*, 150 Pa. St. 180, 187; *Carson* v. *Fed. St. & Pleasant Valley Ry. Co.*, 147 Pa. St. 219, 224; *Ward* v. *Rochester Electric Rwy. Co.*, 17 N. Y. Supp. 427; *Scott* v. *Third Ave. Ry. Co.*, 16 N. Y. Supp. 350, 351.

*George R. Gaither, Jr.* (with whom was *Harry M. Clabaugh* on the brief), for the appellee.

ROBERTS, J., delivered the opinion of the Court.

This action was brought in the Court below to recover damages from the defendant company for its alleged negligence. A satisfactory statement of the facts contained in the record will be found in the reporter's notes of testimony placed at the head of this case.

The record presents but one exception, which is taken by the defendant to the action of the Court in granting a special instruction of its own, and also the fourth prayer of the plaintiff, and in rejecting the first, second, third, fourth, fifth, sixth, eighth, ninth and tenth prayers of the defendant. The plaintiff's fourth prayer announces the rule of damages, which was not discussed at the hearing, and if controverted we fail to discover any objection to it. The

instruction given by the Court is quite as favorable, if not more so than under the testimony in the record the defendant was entitled to have. This instruction does not leave the question of contributory negligence on the part of the plaintiff to be found by the jury, but declares as matter of law that in what he did he was guilty of contributory negligence, and concludes, " and therefore the plaintiff is not entitled to recover, unless the jury believe from the evidence that the motorman of the car in question, after he saw, or by the exercise of due care might have seen, that the plaintiff was approaching the track and was apparently about to cross in front of his car, and that the attempt to do so would be dangerous to the plaintiff, might still, by the exercise of reasonable care in the management of said car, have avoided the collision, but failed to exercise such care."

The objection of the defendant in this appeal is mainly to the Court's instruction and not so much to the refusal of the Court to grant its prayers. The Court's instruction upon the subject of the plaintiff's contributory negligence is, as already stated, quite as favorable to the defendant as it had any right to expect.

The Court was clearly right in rejecting the defendant's first and second prayers, for the reason that the Court should in no case take the question of negligence from the jury, unless the conduct of the plaintiff relied on as amounting *in law* to contributory negligence, is established by *clear and uncontradicted* evidence. *McMahon's case,* 39 Md. 449. The conflict of testimony in the record justified the Court's action in this respect and left no other course to be rightly followed.

After the Court's special instruction, the fourth, fifth, sixth, eighth and ninth prayers were unnecessary and well calculated to mislead the jury. The doctrine announced in the concluding portion of the Court's special instruction, to which exception is taken, has been so frequently and so thoroughly discussed and affirmed by this Court in all its

legal relations to the subject of negligence, that there remains nothing further to be said, except to repeat that we have repeatedly approved and applied the doctrine of the instruction in numerous cases, notably in *McMahon's case, supra; McDonnell's case,* 43 Md. 551; *Green's case,* 56 Md. 92; *Wallace's case,* 77 Md. 435; *Arnreich's case,* 78 Md. 589; *Coleman's case, ante,* p. 328, decided Dec. 19, 1894.

The tenth prayer asserts a proposition which has never been declared to be law in this State, and which, for very obvious reasons, we think is not entitled to the sanction of this Court. The Court below was asked to say "that a street car has a right of way on that portion of the street upon which alone it can travel, *paramount* to that of ordinary vehicles." The doctrine had at one time found expression in some of the Courts of this country, but a just sense of criticism has caused it to be abandoned. It would be both unjust and unwise to permit such a doctrine to prevail in our Courts. It makes no material difference how street cars are propelled, whether by animal power, electricity or otherwise. The vice of the doctrine contended for does not involve the subject of the motive power. It is solely a question as to the mutual rights of street car companies and of individual citizens to use the streets of a city. Neither has a superior right to the other. The right of each must be exercised with due regard to the right of the other, and the right of each must be exercised in a reasonable and careful manner, so as not to unreasonably abridge or interfere with the rights of the other. *Omaha St. Ry. Co.* v. *Cameron* (Neb.) 61 N. W. 606; *Lyman* v. *Union R. Co.* 114 Mass. 83; *Adolph* v. *Central, &c., R. Co.,* 65 N. Y. 554; *Connelly* v. *Trenton Pass. Ry. Co. Consolidated,* N. J. Err. App. 29 Atl. R. 438.

Since the preparation of this opinion the case of *Cooke* v. *The Baltimore Traction Company* has been decided by the Court, *ante,* p. 551. The opinion in that case contains a careful review of the questions presented on this appeal and dis-

penses with the necessity for further consideration of the case. The judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided March 26, 1895.)