# STATE OF MARYLAND, Use of Evelyn G. Trenary ET AL.,

## vs.

# UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE.

*Street Railway—Injury to Person Near Track—Contributory Negligence—Last Clear Chance.*

Where a directed verdict for the defendant is sought, the truth of the plaintiff's evidence, together with such inferences as may be fairly drawn therefrom tending to support his cause of action, will be assumed.                               p. 118

Where a turnpike company has granted to a street railway company the right to maintain tracks on its road, the road being a public highway, both the users of the tracks and the users of the roadway owe, each to the other, the duty of exercising ordinary care to avoid injury to them by the manner in which they exercise their respective rights to pass to and fro thereover.                               p. 120

That the character of construction necessary to the operation of its railway system by the company in rural and sub-urban sections makes it impracticable to use for general traffic that part of the road occupied by its tracks, does not relieve it of the obligation of using ordinary care in the operation of such system, to avoid injury to persons in the lawful use of that part of the road used for general traffic.                               p. 120

Where a railway track is laid longitudinally upon the surface of a street, the rights of the public and of the railway company are, as regards the use of the street, mutual, reciprocal and equal, neither being superior or paramount to the other, except that, as the company cannot so readily stop its trains or its cars, and is confined to its track, it has the right

of way of passage thereon, and persons who are upon the track must leave it and give way until the train or car has passed.

p. 120

One who stood in a road so near to railway tracks thereon that he was struck by a car passing over them, he having his back turned to the railway, and his attention fixed on an automobile, *held* guilty of negligence.     p. 121

That he did not see the approaching car could not exculpate him, because, standing in a position of such peril, and knowing, as he must have known, from the character of the railway construction and of the country, that cars might be expected to run over such tracks at a fairly rapid rate of speed, it was his duty to have seen it.     p. 121

That one struck by an electric car was negligent in placing himself in a position of peril would not relieve the railway company of responsibility, if by the exercise of ordinary care it knew or could have known of his danger in time to have avoided the accident, and failed to take such measures as were available to prevent it.     pp. 121-123

Where, an automobile omnibus having stopped by the side of defendant's railway track, leaving a space between them of from five to seven feet, and five persons, expectant passengers on the omnibus, were standing in that space, and the motorman of defendant's car could have seen that their attention was fixed on the automobile, that some of them were so standing as possibly not to see his car, that some of them were so near the track that his car would pass perilously near them, and that the noise of a car then passing in the opposite direction might deaden any warning from him, and he gave no sufficient warning, but approached the group without lessening speed, *held* that there was evidence of negligence on his part.     p. 124

The negligence of one of such persons in standing in such a position that he was struck by the car was not to be regarded as the proximate cause of the accident to him, but rather the motorman's failure to take reasonable precautions after having seen the group of persons standing so near the track, it being inferable that the person so struck was, by reason of an inter-

vening member of the group, not in a position to see the car, and that he heard no warning of its approach, since the other eight persons in and about the automobile heard no such warning.                                   pp. 125-127

*Decided March 16th, 1923.*

Appeal from the Court of Common Pleas of Baltimore (DUFFY, J.).

Action by the State of Maryland, for the use of Evelyn G. Trenary, widow of, and Suzanne J. Trenary, infant daughter of, Samuel M. Trenary, deceased, against the United Railways and Electric Co. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Robert R. Carman,* with whom were *John B. Deming* and *Keech, Deming, Kemp & Carman* on the brief, for the appellant.

*Philip S. Ball,* with whom was *J. Pembroke Thom* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On the twenty-first day of May, 1921, Samuel M. Trenary became a passenger on an automobile omnibus running from Baltimore to Frederick. When the automobile reached a point between Hilton Street and Beechwood Avenue on the Frederick Road, where a driveway from the property of Mr. Oscar Coblentz crosses the tracks of the United Railways and Electric Company, and connects with the travelled part of the Frederick Road, it stopped, in accordance with a notice previously given the driver, to take on two passengers, Miss Coblentz and Miss Hood, who were going to Frederick, and

the driver asked Mr. Trenary to get out of the automobile and take another seat, in order that the two ladies might sit together. He complied with the request, and took a position between the automobile and the railway tracks, but so near the tracks that an east bound car of the appellee, running over those tracks, struck him, and so badly injured him that he died on June 31st, 1921. Thereafter, on July 29th of the same year, this suit was brought for the use of Evelyn G. Trenary, his widow, and Suzanna J. Trenary, his infant daughter, on the theory that his injuries, and consequent death, were occasioned by the negligence of the appellee. The case was tried in the Court of Common Pleas of Baltimore City, and, at the conclusion of the plaintiff's testimony, that court directed a verdict for the defendant, on these grounds, namely, (1) that there was no legally sufficient evidence to show that the accident was caused by any negligent act of the defendant, (2) that the uncontradicted evidence showed that the negligence of the deceased directly contributed to the happening of the accident which resulted in his death, and (3) that his own negligence was the direct cause of his injuries. Judgment was in due course entered upon the verdict rendered in obedience to that direction, and from that judgment the present appeal was taken.

The record contains but one exception, which relates to the court's rulings on the prayers, which submitted the propositions to which we have referred, which formed the basis of the court's action. Since those propositions rest upon the theory that there was no evidence in the case legally sufficient to show that the accident complained of was due to any negligence of the defendant, but that it does show conclusively that it was caused by the negligence of the deceased, it is necessary, in disposing of the questions thus submitted, to refer to all material facts bearing upon the accident.

The Frederick Road was originally the Baltimore and Fredericktown Turnpike Road, and by several grants from the turnpike company, the defendant acquired the right "to

lay open 'T' rail track construction" on that part of it on which the accident occurred. In the exercise of the rights thus obtained, the defendant located and constructed a double "T" rail track on the northern part of the Frederick Road at that point. That part of the road lying to the south of the tracks has been improved by the State Roads Commission, which acquired the interest of the turnpike company in the turnpike in 1914, subject to the rights of the defendant therein, and is used as a State road for pedestrian, vehicular and general travel. At the place where the automobile stopped, the general direction of the road is east and west. North of it, and abutting on the defendant's right of way, is the property of Mr. Coblentz. Access from Mr. Coblentz's residence to that part of the Frederick Road used for general traffic is furnished by a macadamized driveway, which crosses the tracks of the defendant, and which was constructed by it. The surface of that driveway is nearly level with the top of the rails, and slopes from the southernmost rail to its junction with the main road south of the tracks, at which point it is about twenty-five feet wide.

The automobile in which Mr. Trenary was a passenger reached that driveway between twenty and thirty minutes after eight o'clock in the morning, and there, in response to a request of Mrs. Coblentz, it stopped to receive the two passengers (Miss Coblentz and Miss Hood, who were staying at her home), at a distance variously estimated at from five to seven feet from the south rail of the east bound track. As the automobile came to a stop Mrs. Oscar Coblentz, Miss Naomi Coblentz and Miss Hood approached it from the Coblentz property. As they approached, Mr. Trenary, at the request of the chauffeur, who was sitting in the rear of the automobile, vacated his seat in order to make room for Miss Coblentz and Miss Hood, and went out of the rear door of the automobile. The chauffeur had in the meantime left the machine to get the baggage of his prospective passengers, and after he had deposited it in the car he turned to help

them into the machine. As the three ladies approached the car tracks, two cars were approaching the crossing over the defendant's tracks, one going east and the other going west. The west bound car was so near that they waited for it to pass. At that time the east bound car, which Mrs. Coblentz saw, was about 300 feet away. They crossed the track and, as Mrs. Coblentz took a position betwen the car tracks and the automobile, she noticed that the east bound car was about ninety or ninety-two feet away. At that time there were grouped between the automobile and the car tracks five persons, Mrs. Coblentz, Miss Coblentz, Miss Hood, the chauffeur, and Mr. Trenary. What their respective positions were the record fails to definitely disclose, although it does show that the two ladies were in the act of entering the automobile, the chauffeur was assisting them, Mrs. Coblentz was standing near the track, and somewhere to the east of her and near the track was Mr. Trenary.

The chauffeur had helped Miss Coblentz into the automobile and was in the act of helping Miss Hood in, when the east bound car grazed Mrs. Coblentz and struck Mr. Trenary, inflicting upon him the injuries which resulted in his death.

Miss Coblentz was not aware of the approach of the east bound car until after it struck Trenary, the chauffeur had no recollection of having seen it until after the accident, Mrs. Coblentz saw it when it was about ninety feet away but, at the instant it passed, her attention was drawn to what was going on in the automobile and she failed to realize the danger of her position until after it had passed. Of the nine eye witnesses of the accident, one testified that on a former occasion he had said that he had a faint recollection of having heard a bell, another was not asked whether he heard a bell, while the other seven testified that they heard no bell or other warning given of the approach of the car, although all of them appear to have been near enough to have heard such warnings had they been given, seven being either in or near the automobile, one in the east bound car, and one about ninety yards away when the accident occurred.

The speed of the car was variously described by the several witnesses who observed its approach as "fast," "pretty fast," "a right fair speed," "fifteen miles an hour," one of them referred to its passing him as a "whiz by," and another said he had never seen a car run so fast in his life. There was also testimony that it had a swaying, swerving, rocking motion as it approached the crossing and that it did not reduce its speed until it struck Trenary, when it stopped in about two car lengths.

The exact position which Mr. Trenary occupied when he was struck is not shown by the testimony. He was east of Mrs. Coblentz, who was grazed by it, and near enough to the tracks to be hit by the car, and one witness said he had stepped aside to let the ladies "board" the automobile, and a statement of the same witness was offered in evidence by the defendant, in which he said that Trenary seemed to be coming towards the automobile and looking in the direction he was going.

There was also some difference in the testimony as to what part of the car struck the deceased, but as that circumstance is immaterial, it is needless to refer in detail to the evidence relating to it.

These are the essential facts directly established by the evidence in the case, or fairly inferable from it, and, in accordance with the rule so frequently stated by this Court, that where a directed verdict for the defendant is sought, the truth of the plaintiff's evidence, together with such inferences as may be fairly drawn therefrom tending to support his cause of action, will be assumed, we have treated all facts appearing in the evidence which tended to support the plaintiff's case as established for the purposes of the question before us.

These facts, together with the defendant's granted prayers, present for our consideration these questions, (1) was the defendant in the operation of its cars on the tracks referred to obliged to use ordinary care to avoid injury to persons in

the lawful use of the highway adjacent thereto, (2) if it did owe such a duty, are the facts in this case legally sufficient to support an inference that the injuries causing the death of Mr. Trenary resulted from any breach of that duty, (3) did any negligence of the deceased directly contribute to the happening of the accident, and (4) if the deceased was guilty of negligence, could the driver of the defendant's car, by the exercise of ordinary care, have discovered the danger to which it exposed him and could it thereafter have avoided the consequence of such negligence?

The first question depends to some extent upon the character of the roadway within the outlines of which the defendant's tracks are laid, and upon the nature and extent of its right to construct and maintain such tracks, and to operate its cars thereover.

The Frederick Road was originally laid out, dedicated, constructed, and used as a public highway, under the authority conferred by the Legislature of Maryland upon the president, managers and company of the Fredericktown Turnpike Road, and as such was impressed with all the characteristics and incidents of a common highway. *Peddicord* v. *Balto., C. & E. M. R. R. Co.,* 34 Md. 463. On October 1st, 1895, the turnpike company granted to the defendant's predecessors in title "a perpetual and absolute right to construct and maintain double T-rail tracks on the road and also double T-rail tracks from Melvin Avenue to the present terminus of the road, a distance of 3,200 feet," and "The United Railways and Electric Company of Baltimore acquired the right to lay open T-rail construction on this stretch, by grants from the president, managers and company of the Baltimore and Fredericktown Turnpike Road, dated March 11, 1861, June 18, 1895, October 1, 1895, and March 15, 1899, for a valuable consideration." The construction and operation of a railway under these grants over a part of the land lying within the outlines of the turnpike right of way was not in substitution for, but in furtherance of, the use of the road as a public highway to which it had been dedicated. *Peddi-*

*cord* v. *Balto., C. & E. M. R. Co., supra; Green* v. *City &
Suburban R. Co.,* 78 Md. 294. Both the railway and the
roadway for ordinary traffic are within the outlines of a
public highway, and the users of each owe to the users of the
other the duty of using ordinary care to avoid injury to them
by the manner in which they exercise their respective rights
to pass to and fro thereover. And while the character of
the construction necessary to the operation of its railway
system by the defendant in rural and suburban sections
makes it impracticable to use that part of the road occupied
by its tracks for general traffic, that fact does not relieve
it of the obligation of using ordinary care in the operation of
its railway system, to avoid injury to persons in the lawful
use of that part of the road used for general traffic. In 3
*Elliott on Railroads,* par. 1443, that principle is stated in
these words: "As a general rule, a railroad company has
the exclusive right to use its own track, and one who goes
upon it, without an invitation or license from the company,
is a trespasser. But this rule does not apply at highway
crossings, nor, under ordinary circumstances, where the track
is laid longitudinally upon the surface of a street, whether it
be that of a commercial or street railroad company. The
public, exercising due care, still have a right to use the
street. And so, the railroad company, likewise exercising
due care, has also the right to use that portion of the street
upon which its track is laid. Their rights are, in most
respects, mutual, reciprocal and equal, neither being superior
or paramount to the other, except that, as the company can-
not so readily stop its trains or cars and is confined to its
track, it has the right of way of passage thereon, and persons
who are upon the track must leave it and give way until the
train or car has passed," and that appears to us to be a fair
and sound statement of the rule.

The second, third and fourth questions all depend upon
the application of related principles, and will be considered
together. And in connection with them, it may be said, at

the outset, that the evidence in the case does tend to show that the deceased was negligent. No other conclusion is possible from facts that show that he stood so near to the railway tracks that he was struck by a street car passing over them, with his back turned to the railway, and with his attention fixed on the automobile. The fact that he did not see the approaching car, if that was a fact, could not exculpate him, because standing in a position of such peril, and knowing, as he must have known, from the character of the railway construction and the character of the country, that cars might be expected to run over such tracks at a fairly rapid rate of speed, it was his duty to have seen it. *Wash., B. & A. R. Co.* v. *State, use of Goodwin,* 140 Md. 118.

The question before us however, is not whether he was negligent, but whether we can say as a matter of law from the evidence in this case that his negligence contributed to, or was the proximate and direct cause of, the accident, because the mere fact that he was negligent in placing himself in a position of peril would not relieve the defendant of responsibility, if by the exercise of ordinary care it knew or could have known of his danger in time to have avoided the accident, and failed to take such measures to prevent it as were available to it. That proposition, while not universally approved, is supported by the undoubted weight of authority, and is certainly the law of this State.

In 3 *Elliott on Railroads,* par. 1542, it is said: "In most jurisdictions, under the doctrine of the 'last chance' or 'last clear chance' the plaintiff may still recover, notwithstanding he has negligently gone into a place of peril, where he has a right to go without being a trespasser, if the defendant discovered, or ought in the exercise of ordinary and reasonable care to have discovered, his peril in time by the exercise of such care to avoid injury to him and failed to exercise such care by which the injury would have been avoided."

And in 25 *R. C. L.* 1256, it is said: "Where the negligence of the defendant is the proximable cause of the injury

for which suit is brought, and that of the plaintiff only the
remote cause, the plaintiff may recover notwithstanding his
negligence; the doctrine in that respect being that the law
regards the immediate or proximate cause which directly
produces the injury and not the 'remote cause which may
have antecedently contributed to it. This principle has been
styled the doctrine of 'last clear chance,' and is regarded as
an exception to the general rule forbidding recovery by a
plaintiff guilty of contributory negligence. It is no de-
parture from just principles, but a wholesome and humane
doctrine, to hold that if after the defendant knew, or in the
exercise of ordinary care ought to have known of the plain-
tiff's negligence, he could have avoided the accident, but
failed to do so, the plaintiff can recover. In accordance with
this rule it is well settled that one who is injured by a street
car in a street may recover for such injury, notwithstanding
his own initial or preceding contributory negligence in expos-
ing himself to danger, if with the appliances at hand the per-
son in charge of the car could safely have stopped it after he
first saw or should have seen the danger and before reaching
the point of collision."

The principles thus stated have in several cases been recog-
nized and approved by this Court. In *Maryland Central R.
Co.* v. *Neubeur,* 62 Md. 398, an action for injuries sustained
through a collision with defendant's train at a public cross-
ing of a steam railroad, it was said: "The general principle
is, that where both parties by their negligence directly con-
tribute to the production of the accident, neither has a right
to recover of the other for injuries sustained thereby. But
there are exceptions to this general rule; and in cases like
the present, the exception is, that if the defendant, or those
acting for it, had become aware of the perilous situation of
the plaintiff, though that peril had been incurred by the negli-
gent or even reckless conduct of the plaintiff, yet the defend-
ant or its agents would be bound to use all reasonable dili-
gence to avoid the accident. But in order that this qualifica-

tion of or exception to the general rule may be successfully invoked by the plaintiff, he must show knowledge on the part of the defendant, or its agents, of the peril in which he, the plaintiff, was placed, and that there was time after such knowledge, within which to make the effort to save him from the impending danger." In *Lake Roland Rwy. Co.* v. *McKewen,* 80 Md. 601, the Court, in dealing with the liability of a railway company for injuries resulting from an accident in which a traveller on a city street was struck by one of its cars, made the liability of defendant depend, not upon whether the driver of the street car actually did see the plaintiff, as in the Neubeur case, but whether by the exercise of due care he could have seen him in time to have avoided the accident. In *Consol. Ry. Co.* v. *Rifcowitz,* 89 Md. 341, under somewhat similar circumstances, the trial court added to a prayer offered by the defendant, exculpating it on the ground that the plaintiff was guilty of contributory negligence, this modification, "unless the jury shall further find that after the motorman saw, or could reasonably have seen, the peril of the plaintiff, he failed to exercise ordinary care to avoid the accident," and in dealing with the propriety of that modification this Court said: "The precise form of limitation upon the general proposition, that the contributory negligence of the plaintiff has deprived him of his right of recovery, which is embodied in the modification made by the learned judge below to the defendant's first prayer, has met the sanction and approval of this Court in several cases of accidents on street railways. *Lake Roland R. R. Co.* v. *McKewen,* 80 Md. 601; *Baltimore Traction Co.* v. *Appel,* 80 Md. 610." And again in *Armstrong* v. *Consol. Rwy. Co.,* 92 Md. 563, the Court, in dealing with a prayer which stated that, if the jury found the plaintiff guilty of contributory negligence, that would not disentitle him to recover, if the defendant's motorman could have avoided the accident by the exercise of due care after he saw or ought to have seen the plaintiff's peril, said: "Neither of these two prayers was

objectionable in the form in which it was granted, if the
facts of the case justified the Court in modifying, in the man-
ner just stated, the general doctrine that negligence on the
part of the plaintiff contributing directly to the injury com-
plained of will debar his recovery of damages therefor."
Nor has there been any modification or departure from the
principles thus announced, but they were restated and the
recent cases dealing with them reviewed and approved, in an
opinion by JUDGE PATTISON in *Payne* v. *Healey,* 139 Md.
96. Because of the thickly settled character of the adjacent
territory, and because the railway tracks are in immediate
proximity and laid along a public highway which has many
of the characteristics of a city street, of which it is but a con-
tinuation, the rule stated in these cases rather than that
stated in the Neubeur case should apply.

Applying these principles to the facts of this case, we can-
not say that there was no evidence legally sufficient to show
that the defendant was negligent, nor can we say as a matter
of law that the conceded facts show that the negligence of
the deceased was the direct and proximate cause of the acci-
dent, or that it was sufficient to bar the plaintiff's right to
recover under the peculiar circumstances of this case, but in
our opinion those questions should have been submitted to a
jury, to be determined by them in the light of all the cir-
cumstances.

The accident occurred in the daytime; the motorman of the
car which struck Trenary had for several hundred feet an
unobstructed view of the automobile standing opposite the
Coblentz driveway; he saw, or could have seen had he looked,
five people crowded in a space from five to seven feet wide,
between the automobile and the tracks on which he was run-
ning his car; he knew that the overhang of his car would take
one and a half feet of that space; he could have seen from
their actions that some members of that group were about
to enter or were entering the automobile, and that the atten-
tion of the others was directed either to them or to the auto-

mobile; and that the manner in which they were grouped might prevent some of them from seeing the approach of the car; and he could have seen that some members of the group were so near the tracks that the car which he was driving might either strike them or would at least come perilously near them unless they moved, if he passed them; he knew that a west bound car had just passed and that the noise caused by it might deaden any warning which he might give, and in point of fact he gave no warning sufficient to attract the attention of any one near the automobile, and notwithstanding those facts he continued to approach the group without lessening in any degree the speed of the car.

Giving to those facts the weight and the meaning which common experience indicates they should have, they do afford some evidence, at least legally sufficient evidence, that the motorman was negligent in approaching the group at a speed great enough to inflict fatal injuries upon any member of it who might be struck by the car which he was driving. If the space between the automobile and the tracks was as narrow as some of the witnesses testified, it was only five feet wide, and of that space about one and a half feet was taken up by the overhang of the car, leaving a fairly safe zone only three and a half feet wide. And it cannot be said, as a matter of law, that to drive a car rapidly and without any audible or perceptible warning of its approach, which any of the group heard, towards that group, occupied as they were, situated as they were, where a sudden movement, a jostle, or a false step, might thrust any one of them from the narrow safety zone into danger, was not negligence.

Nor upon the same facts can it be said as a matter of law that Trenary's negligence directly contributed to or was the proximate cause of the accident. Because, even if it is conceded that he was negligent in being so near the tracks that a passing car could strike him, nevertheless his peril must have been apparent to the motorman, in time for him to have either stopped his car, or have given some warning loud

enough to attract his attention. For while the motorman did not know Trenary, and may not have actually been able to see him or identify him as a particular member of the group, nevertheless he could see the group of figures, one of whom was Trenary, and he could see that members of that group, including Trenary, were so close to the track that it would endanger them to pass them at the rate of speed at which the car was travelling. On the other hand it may be inferred that Trenary was not in a position to observe the approach of the car, and that he did not see it, because Mrs. Coblentz was between it and him, and it may also be inferred that he heard no warning of its approach, because none of the other eight persons in or about the automobile heard any such warning, although their opportunities for hearing it, had it been given, were as good as his. Since therefore it may be inferred from the evidence that the motorman knew of the deceased's danger, and that he himself was not aware of it, and that the motorman, in the exercise of ordinary care, should have known that persons in the group might not, because of their position, know of the car's approach, it may also be inferred that he was negligent in failing to take reasonable precautions to avoid striking the deceased after he saw or should have seen the group, and that such negligence was the proximate cause of the accident. Such facts as those referred to differentiate this case from cases in which the injured person's negligence has been held to bar any recovery on account of injuries resulting from the accident, as in cases where the person injured saw the approach of the car, and nevertheless remained in a place of danger, as in the *Garwick case,* 101 Md. 239, or where the injured person deliberately left a place of safety to go into a place of danger, as in the "crossing" case, or where the defendant did not become aware of the injured person's danger until it was too late to avoid injuring him, as in *Wash., B. & A. R. Co.* v. *State, use of Goodwin,* 140 Md. 118, because, whilst in this case Trenary was negligent in placing himself in a position

of danger, it may be inferred that the danger was not apparent to him, and he did not actually know of it, but that it was apparent to the motorman in time to have avoided it, had he exercised ordinary case.  Because in those cases the defendant was justified in presuming that the person injured knew of his danger and would do what was necessary to avoid it, while in this case no such presumption was justified.    It could be presumed that he knew that his position might become dangerous, but not that the danger was imminent and rapidly approaching.

It follows from what we have said that in our opinion the case should have gone to the jury, and that the defendant's prayers should have been refused, and because of the error in those rulings the judgment appealed from must be reversed, and a new trial awarded.

*Judgment reversed, and case remanded for a new trial, with costs to the appellant.*