## LEO FELDSER et al. *v.* GERTRUDE BEEMAN.

[No. 45, January Term, 1939.]

*Decided March 8th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Benjamin C. Howard,* with whom were *Miles & O'Brien* on the brief, for the appellants.

*Charles D. Harris,* with whom were *James J. Lindsay* and *Joel J. Hochman* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

At the close of the testimony on the part of the plaintiff, the defendants submitted prayers requesting that a verdict in favor of the defendants be directed on the alternative theories that there was no legally sufficient evidence from which the jury could find the defendants guilty of negligence; or, if there were such testimony, that the plaintiff would be barred from a recovery because of contributory negligence. The court refused the prayers and the case went to the jury without the introduction of any testimony in behalf of the defendants, and the judgment on the verdict rendered was against the de-

fendants, who now bring this appeal. The sole questions for review arise on the rulings on the demurrer prayers.

The testimony tended to show that Mrs. Gertrude Beeman, the plaintiff, was a passenger, on June 21st, 1937, in a motor bus used in the transportation of passengers for hire by a public corporate carrier known as The Greyhound Lines. The destination of the motor bus in which the plaintiff was traveling was the terminal station of the carrier at Baltimore. The station was between two parallel streets which ran east and west, and there was a concrete driveway which the carrier's busses and permitted vehicular travel entered from the street to the south and left by the street to the north. To the east of the driveway a platform binds upon it and lies between the driveway and the station building. The premises are used by the carrier in its transportation service, and, particularly, for the reception, embarking and disembarking, and general convenience of its passengers and their baggage.

The motor bus in which the plaintiff was a passenger arrived at the station in the morning at about fifteen minutes after eleven. It stopped on the driveway in the station to discharge its passengers and unload their baggage. The motor bus stood a short distance back of a motor bus which had previously entered the station, and the width of the portion of the driveway between the right side of the motor bus and the platform afforded enough space for an automobile to drive through. After the motor bus was at a standstill, the driver opened the door, which was on the right at the front of the motor bus, and swung to the left toward the front of the bus, according to the testimony of the plaintiff, and the passengers began to leave, and the baggage had to be unloaded.

There was a step down from the motor bus for the passengers to take, and that put them on the driveway, and then they had to walk across the intervening distance to the platform. As they stepped out and down, some of the passengers formed a group moving from the motor

bus to the platform, while others remained, waiting to receive their baggage, until the plaintiff left the vehicle. She had sat toward the back of the bus and she was the last passenger to leave. The driver handed the over-night bag to her, and with it in her hand she took one step down with her left foot and started to take her second step forward. As she did so the bumper of a moving, north-bound, taxicab hit her right knee and threw her to the left and knocked her down. She illus-trated to the jury how, in the fall, her right foot had become fast under the wheel of the taxicab, and was held there until the driver had backed off her injured foot. The taxicab was stopped quickly and before the wheel had passed over the foot. The taxicab was owned by the defendants, and was operated by their agent, who, with a bus dispatcher of the carrier, took the plaintiff to the hospital. On the way, the plaintiff testified that the dispatcher asked the driver, in reference to the acci-dent: "Where were you looking?" The driver's reply was: "I didn't see the woman," and that the bus door obstructed his view.

The plaintiff's testimony was to the effect that the door was not between her and the driver, as the door opened toward the front of the bus. She further said that she had first seen the taxicab when she was struck and that she had heard no horn blown nor any other warning sig-nal given of the approach of the taxicab. She was asked if she had looked to her right, as her view was unob-structed, and she stated that she had not, but that she had looked ahead, and had not had a chance to look to the right as she had just stepped from the bus and was taking another step when she was struck. There was no testimony given from which the speed at which the taxi-cab was driven could be computed.

On this testimony the jury was entitled to pass upon the questions of primary and contributory negligence. The taxicab of the defendants entered upon the private driveway of the public carrier by license or invitation, and they were bound by the duty that the driver of their taxicab while on the premises should exercise reasonable

care and diligence relative to the circumstances. The defendants knew that the premises were used as a station of a public carrier of passengers for hire, and that its motor vehicles or busses used the highway both to enter and leave, and to receive and deliver their passengers and baggage. The operator of the taxicab which struck the plaintiff entered this driveway, and would have seen, if he had looked, the motor bus standing in the driveway, and the passengers in the course of leaving the open door, and, after receiving their baggage from the carrier's attendant, walking across that portion of the driveway between the motor vehicle and the platform which was directly in front of the taxicab, so that he could not drive safely until all the passengers had walked out of the way. The passengers stood near the front of the motor bus on the way until they were handed, in turn, the baggage. Some had left, but a group remained when the plaintiff, the last to leave, stepped out of the bus and was hit. It was the plain duty of the driver of the taxicab to use reasonable care and diligence in the operation of the taxicab, so as to avoid injury to any of these plainly visible passengers. On the testimony offered, the jury could have found that the collision happened because the driver had not used such reasonable care and prudence in the management and control of the taxicab, and hence had not given any warning of his approach nor stopped nor altered the course of the taxicab in time to avoid striking the plaintiff. *State v. United Rwys. & Electric Co.*, 143 Md. 112, 125, 122 A. 20; *Waltring v. James*, 136 Md. 406, 111 A. 125; *Huddy on Automobile Law*, vols. 5 and 6 (9th Ed.), sec. 24. See *Balto. & R. Co. v. Engle*, 149 Md. 152, 156, 131 A. 151; *Opecello v. Meads*, 152 Md. 29, 35, 135 A. 488.

The passenger's failure to look to the right before she stepped down is not, under the circumstances, a negligent intervening act of such distinct, prominent, and decisive nature and effect that ordinary, reasonable, minds would not differ as to its being the direct and proximate cause of the injury. It was the duty of the passenger to exercise ordinary or reasonable care for her safety. The particular

circumstances affect the degree of care. In this case, the carrier had brought the motor vehicle to a stop in the usual place for the departure and reception of passengers, with their baggage. She, therefore, was not bound to assume the presence of danger to her as she alighted, nor was she under any duty to anticipate that any subordinate use of the way by a licensee or invitee who would be upon the way with a taxicab would, through his negligence, create a danger against which reasonable care would oblige her to guard. *Gitomir v. United Rwys. & Elec. Co.*, 157 Md. 464, 469, 146 A. 279; *Beven on Negligence* (4th Ed.), 212.

It is upon the assumption of a common exercise of reasonable care and diligence on the part of one another that the ordinary affairs of life proceed. In addition, the carrier had its attendant present, who handed the passenger her bag. She looked, after she turned to the side of the bus to alight, and she saw her fellow passengers standing in the way in a group to the left. Her attention became absorbed in stepping down and out without falling, and she had put her left foot on the driveway, and was struck before she could end a second step with her right. The court cannot say as a matter of law that the plaintiff must fail because she did not stop and look in all directions for indications of danger which she then had no reason to believe existed. *Huddy's Automobile Law*, vols. 5 and 6 (9th Ed.), sec. 110; *Sillik v. Hoeck*, 168 Md. 639, 642, 178 A. 852; *Maryland Ice Cream Co. v. Woodburn*, 133 Md. 295, 296, 299, 105 A. 269; *Baltimore v. Mattern*, 133 Md. 14, 16, 104 A. 478; *Mears v. McElfish*, 139 Md. 81, 84, 85, 114 A. 701; *Ausherman v. Frisch*, 164 Md. 78, 81, 82, 163 A. 852; *United Rys. & Elec. Co. v. Perkins*, 152 Md. 105, 113, 136 A. 50; *Pennsylvania R. Co. v. Construction Co.*, 153 Md. 19, 23, 137 A. 503.

The case on this record presented factual issues which were for the jury to determine, and there was no error in the ruling of the court.

> *Judgment affirmed, with costs to the appellee.*