# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A-Z Learning Daycare,        :
          Petitioner    :
              :
          v.    :    No. 918 C.D. 2016
              :    SUBMITTED: December 9, 2016
Workers' Compensation Appeal    :
Board (DiGiorgio),    :
          Respondent    :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED: April 11, 2017**


      A-Z Learning Daycare (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting the claim petitions that Christina DiGiorgio (Claimant) filed against Employer and the Uninsured Employer Guarantee Fund (UEGF). We affirm.

      Claimant worked as a pre-school teacher for Employer from September 2012 to May 2013. Depending on when she finished cleaning and the last child left, she worked from 5:15 a.m. until approximately 6:00 p.m. Pursuant to a final hourly wage of $10.75, her duties, *inter alia*, included making lesson plans, teaching children, preparing food, and readying the building for occupancy. On February 11, 2013, Claimant left her house earlier than normal due to the inclement weather. When she arrived at work between 5:00 a.m. and 5:30 a.m.,

she parked her truck in the front of the building, opened the front door, turned on the lights and heat, ensured that the water was running, and clocked in for the day. She then returned to her truck to retrieve her lesson plans, pocketbook, coffee, and breakfast. Upon returning to the building, she suffered work-related injuries to her lower back and right knee when she twice slipped and fell on the ice covering Employer's parking lot and ramp. As a result, she experienced excruciating pain in her lower back and right knee. WCJ's June 18, 2015, Decision, Finding of Fact (F.F.) No. 5.

When Employer's director, Ms. Carolyn Hardy, arrived at 7:00 a.m., Claimant informed her that she had fallen on the ice covering Employer's parking lot. Although Ms. Hardy testified that the lot was fine when she arrived two hours after Claimant, she acknowledged that someone besides Claimant also had fallen there that day. F.F. No. 10. In any event, once there was adequate personnel coverage for the children, Claimant left work early to seek treatment at Pocono Mountain Family Physician Associates. A physician's assistant examined her, sent her for an x-ray, provided her with a prescription for an anti-inflammatory drug, and advised her to follow-up with an orthopedist. Claimant stayed out of work the next day, but returned the following day despite her pain. F.F. No. 6.

On February 22, 2013, Claimant followed up with board-certified orthopedic surgeon Maurizio Cibischino, M.D. He testified that Claimant advised him that she slipped and fell on black ice on February 11 and first landed directly on her back and then fell and twisted her knee. F.F. No. 13. He treated her knee injury and, ultimately, performed a June 2013 partial lateral meniscectomy of the medial meniscus and a partial lateral meniscectomy. That "surgery confirmed a right knee partial thickness tear of the ACL, medial meniscus tear, lateral meniscus

2

tear, and chondromalacia of the medial tibial and foraminal plateau." F.F. No. 15(d). He opined that Claimant's knee problems were consistent with the mechanism of a slip and fall injury and eventually released her from his care on an as-needed basis. F.F. No. 13. For her back, Dr. Cibischino referred her to board-certified orthopedic surgeon Allister Williams, M.D.

Dr. Williams evaluated Claimant on February 28, 2013. He testified that "Claimant reported that she was walking and slipped on ice and fell backwards on February 11, 2013." F.F. No. 14. As a result, he concluded that she "suffered a lumbar sprain/strain, lumbar radiculopathy and lumbar facet syndrome." F.F. No. 15(d). Opining that these injuries were consistent with the mechanism of a slip and fall injury, he tried various methods to relieve her unresolved pain, restricted her to sedentary work, and has not released her from his care. F.F. No. 14.

Seeking guidance as to Employer's workers' compensation coverage, Claimant asked for information from bosses Mr. and Mrs. Bloom, director Ms. Hardy, and assistant director Ms. Tanya Crutchfield. The same week that Claimant went to Mr. Bloom seeking his signature on workers' compensation paperwork, however, Ms. Hardy pulled Claimant into her office and told Claimant that Employer was discharging her because her medical appointments were interfering with her job. F.F. No. 6. Employer terminated Claimant's employment in May 2013.

In March 2014, Claimant filed a claim petition against Employer alleging that she suffered work-related injuries to her right knee and lower back on February 11, 2013, and seeking full disability from May 5, 2013, and into the future. In its answer, Employer denied the allegations. Claimant also filed a claim petition with UEGF, which admitted that the Department of Labor and Industry in

3

May 2013 received notice of a claim against uninsured employer (Form LIBC-551), but denied all of the remaining allegations. In support of her claim petitions, Claimant presented the deposition testimony of the two orthopedists. Although Employer presented the testimony of several employees, it did not present medical evidence.

The WCJ granted the claim petitions, determining that Claimant established that she suffered the aforementioned work-related injuries and that she provided Employer and UEGF with timely notice of the same. In addition, the WCJ concluded that Claimant proved that, effective June 4, 2013, the date of her knee surgery, she was no longer capable of performing her pre-injury duties and was entitled to temporary total disability benefits at a weekly rate of $382.50 through the present and ongoing. Further, determining that Employer did not have workers' compensation insurance, the WCJ concluded that it was responsible for paying all of her reasonable and necessary medical expenses incurred on account of those injuries[1] and all of her reasonable litigation costs upon proof of payment of the same.[2] The Board affirmed and Employer's timely appeal followed.

In a claim petition proceeding, the claimant bears the burden of establishing his or her right to compensation and all of the elements necessary to support an award of benefits, including a causal relationship between a work-related incident and the alleged disability and the duration and extent of the disability alleged. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812

---

[1] Although Aetna Health Insurance paid Claimant's medical bills, she incurred co-payment expenses. F.F. No. 7. Pursuant to Section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, a subrogation lien for medical bills was established based on Claimant's Exhibit No. 8. F.F. No. 17.

[2] The WCJ concluded that Claimant incurred reasonable litigation costs in the amount of $9,827.23. F.F. No. 18.

4

A.2d 750, 754-55 (Pa. Cmwlth. 2002). Where medical testimony is required relating to causation, it must be unequivocal to support an award. *Haney v. Workmen's Comp. Appeal Bd. (Patterson-Kelley Co.)*, 442 A.2d 1223, 1225 (Pa. Cmwlth. 1982). To determine whether medical testimony is equivocal, it must be reviewed and taken as a whole. *Lewis v. Commonwealth*, 498 A.2d 800, 803 (Pa. 1985). A medical witness's testimony is unequivocal if, after providing a foundation, the witness testified that he or she believes or thinks facts exist. *ARMCO, Inc. v. Workmen's Comp. Appeal Bd. (Carrodus)*, 590 A.2d 827, 829 (Pa. Cmwlth. 1991). Whether medical testimony is unequivocal and competent to support the WCJ's findings is a question of law subject to our plenary review. *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011).

On appeal, Employer maintains that the orthopedists were not competent to testify because neither of them allegedly was told that Claimant sustained her injuries at work and, therefore, did not possess an accurate history for those injuries. In addition, it argues that the Board ignored this argument on appeal.[3] Employer's position is without merit.

The WCJ acknowledged the uncertainty as to the location of the injury, but resolved the issue as follows:

> While there is a question as to whether the Claimant informed the doctors of the slip and fall happening at work, this Judge once again finds as credible [her] testimony that she fell in the parking lot after retrieving items from her car which she used in performing her

---

[3] The fact that the Board may not have directly addressed Employer's contention is of no moment. The issue of whether medical testimony is competent is a legal question subject to our plenary review. *Bemis*, 35 A.3d at 72. In any event, the Board reiterated that both orthopedists opined that Claimant's injuries were causally related to her slip and fall on the ice.

5

work duties. This Judge finds it significant that [she] had already reported to Ms. Hardy of having sustained a work injury prior to seeing any of the medical providers in this matter and, as such, this Judge does not see any reason why the Claimant would not have told the medical providers that she fell in the parking lot at work on February 11, 2013. This Judge also finds it significant that Ms. Hardy acknowledged in her letter of May 24, 2013,[4] that the Claimant was injured on February 11, 2013, and Claimant stated she was injured in the parking lot.

F.F. No. 15(a) (footnote added).

In addition, while it is true that the orthopedists' testimony was uncertain as to the precise location of the ice upon which Claimant twice slipped and fell, the WCJ found "as credible and persuasive the undisputed opinions of both Drs. Cibischino and Williams concerning the nature of the Claimant's injuries to her right knee and low back as a result of *falling on ice*." *Id*. (emphasis added). Given the fact that both doctors in rendering their opinions considered the fact that Claimant twice slipped and fell outside on the ice and that her injuries were consistent with the mechanism of a slip and fall injury, the precise location for

---

[4] Ms. Hardy testified that, at another's direction, she prepared and signed a letter from A-Z Learning Daycare to the Bureau of Workers' Compensation providing as follows:

> We are in receipt of your Employer's Certificate of Insurance request. Mrs. Christina DiGiorgio was injured on 2/11/2013 but it was not in the daycare center. She stated she was injured in the parking lot which is the property and responsibility of the landlord.

September 23, 2014, Hearing, May 24, 2013, Claimant's Exhibit No. 5; Reproduced Record (R.R.) at 231a. *See also* September 23, 2014, Hearing, Notes of Testimony (N.T.) at 64-66; R.R. at 153-55a. Although the landlord's identity is unclear, it is noteworthy that the captions for the decisions below indicate Shawnee Tabernacle Church, Inc., d/b/a A-Z Learning Daycare. In that regard, Gricele Bloom, an accountant responsible for the accounting for A-Z Learning Daycare and co-pastor of the Shawnee Tabernacle Church, testified that the church owns and operates the daycare center and that everyone gets paid by the church. November 25, 2014, Hearing, N.T. at 50-53; R.R. at 415-18a.

medical purposes is irrelevant. As this Court stated in its opinion denying Employer's application for supersedeas: "[T]he WCJ accepted the doctors' testimony that Claimant's injuries were the result of her falls, and whether they were aware of the *location* of those falls is entirely irrelevant to the competency of their testimony as to *medical* causation." August 3, 2016, Memorandum and Order at 3 (emphasis in original).

Moreover, in addition to the WCJ's acceptance of the testimony of Claimant and Ms. Hardy to the effect that Claimant's injuries occurred in Employer's parking lot, there is documentary evidence to that effect. Specifically, Claimant's time card entry for February 11, 2013, indicates that she signed in at 5:30 a.m., worked five hours, "left early doto [sic] falling outside," and signed out at 10:30 a.m. September 23, 2014, Hearing, Claimant's Exhibit No. 2; Reproduced Record (R.R.) at 165a. Similarly, her sick-time entry for February 11, signed by assistant director Ms. Crutchfield as supervisor, indicates that she fell on the ice at 5:15 and worked until 10:00. *Id.*, Claimant's Exhibit No. 3; R.R. at 166a.

In rejecting Employer's position, we are mindful of the requirement to view the evidence and every reasonable inference deducible therefrom in the light most favorable to Claimant as the prevailing party. *WaWa v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). In addition, it is well established that a WCJ as the ultimate fact finder is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Milner v. Workers' Comp. Appeal Bd. (Main Line Endoscopy Ctr.)*, 995 A.2d 492, 496 (Pa. Cmwlth. 2010). Determinations of credibility and evidentiary weight are within the WCJ's exclusive province. *Ward v. Workers' Comp. Appeal Bd. (City of Phila.)*, 966 A.2d 1159, 1164 (Pa. Cmwlth. 2009). Neither this Court nor the

Board in their appellate capacities is entitled to reassess the credibility of witnesses or to reweigh their testimony.

Employer next argues that the Board erred in affirming the WCJ's determination that there was no credible evidence that Employer had cause to terminate Claimant's employment.[5]   Again, we reject Employer's contention. Although the WCJ determined that Employer was entitled to a credit for unemployment compensation benefits after June 4, 2013, he concluded:  "While there has been testimony concerning Claimant's termination from employment, this Judge finds that there has been no credible evidence to establish that [she] was actually terminated from work for cause."  F.F. No. 15(d).  Indeed, the only credible testimony on this subject was from Claimant, who testified that Ms. Hardy advised her that Employer was discharging her due to medical appointments interfering with her job.[6]  F.F. No. 6.  Once again, we reject Employer's improper request to reweigh the evidence and disturb credibility determinations.  On appeal, great deference is to be accorded to such determinations.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[5] *See Se. Pa. Transp. Auth. v. Workers' Comp. Appeal Bd. (Pointer)*, 604 A.2d 315, 317 (Pa. Cmwlth. 1992) (holding that a claimant working under a suspension of benefits who has been terminated for willful misconduct may be denied workers' compensation benefits where it is sufficiently demonstrated that his or her loss of earnings is not due to work-related disability but rather to willful misconduct).

[6] The WCJ rejected as not credible the testimony of assistant director Ms. Crutchfield regarding a May 2013 incident report to the effect that Claimant left children unattended and, therefore, was discharged for willful misconduct.

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A-Z Learning Daycare,                          :
                Petitioner                :
                                :
           v.                              :   No.  918 C.D. 2016
                                :
Workers' Compensation Appeal      :
Board (DiGiorgio),                          :
                Respondent          :

# **O R D E R**

AND NOW, this 11th day of April, 2017, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge